## ELIAS STRAUS AND BROTHER *v.* THE EAGLE INSURANCE COMPANY OF CINCINNATI.

Corporations have such powers, and such only, as the act creating them confers; and are confined to the exercise of those expressly granted, and such incidental powers as are necessary for the purpose of carrying into effect powers specifically conferred.

The act of incorporation, like any other statute, should be construed in such a manner as will best answer the intention of the Legislature; and all its parts should, if possible, be made subservient to, and in harmony with, the leading purposes and objects intended to be accomplished, and for which the corporation is created.

Unless expressly restrained by its charter, a corporation has the incidental power to make any contract, and evidence it by any instrument that may be necessary and proper, to accomplish such purposes and objects.

A note or bill made or received by such a corporation, is, *prima facie*, within its corporate powers, and, therefore, valid; but it is competent to show, that it was given or taken for a purpose not authorized; and when shown, the contract is void, and the instrument a nullity.

An insurance company, authorized by its charter to *invest* its funds and capital stock, as should be deemed best by the directors, for the safety of the capital and interest of the stockholders, has no power to purchase upon credit, the promissory note of one insured by the company, and entitled to indemnity for a loss, for the purpose of setting off such note against the claim.

The power of investment was designed to enable the company to make a profitable use of its surplus funds; but such a contract, involving the use of no such funds, is not only without the limits of the charter, but directly opposed to its leading objects, as it furnishes a strong inducement to withhold prompt payment, for the purpose of depressing the credit of the insured, thereby enabling the company to purchase his paper at a greater discount.

The company, therefore, has no power to become a party to the contract of indorsement, and no capacity to receive or hold the legal title to the note.

A set off can only be allowed for such claims as in good faith and absolutely belonged to the party at the commencement of the action; and does not extend to claims purchased conditionally for the purpose of using them as a set off, and with an agreement to return them to the seller, if they are not so used.

Assumpsit.    Reserved in the District Court of Ross county.

This case was submitted and reserved upon an agreed statement of facts, which appears in the opinion of the court.

*McClintick*, for plaintiffs.

*Fox & G. E. Pugh*, for defendant.

Ranney, J.    This action is brought upon a policy of insurance.    The defendant admits the right of the plaintiffs to recover, unless the promissory notes produced by them are allowed as a set off to the plaintiffs' demand.    From the agreed statement of facts, it appears that these notes, given by the plaintiffs to several creditors of theirs in New York, and upon which there was then due about $3,000, were indorsed by the holders to the defendant before the commencement of this suit, and in accordance with a written agreement made with the secretary of the company, which, after acknowledging the transfer of the notes, and reciting that they were purchased for the purpose of paying off and discharging the amount due upon the policy, bound the company to pay therefor the sum of $2,000, provided they could be made available for that purpose.    But if the amount due upon the policy had been assigned, so that it could not be paid with the notes, and the company were unable to set off the same against the claim, then the company was authorized to return the notes in discharge of the said sum of $2,000.    It further provided, that if the controversy with the plaintiffs should not be settled in thirty days, that the money should be deposited at the best interest that could be obtained, and paid over with the accruing interest thereon.    It further appears, that no money has in fact been deposited or paid over, but things remain as at the date of the agreement.

We may at once dispose of a large part of the argument, by saying, that we make no question that the acts of the secretary in making this agreement have been fully ratified, if not previously authorized, by the board of directors; and that we make

the whole case to depend upon the corporate power of the company to make such a contract, and its capacity, in this manner, and for such purposes, to acquire and hold the legal title to the notes : and this further question, whether claims purchased conditionally, and for the mere purpose of being used as a set off, can be thus used ?

1. In determining the first of these questions, we are enabled to invoke as a foundation for all reasoning upon the subject, a well settled principle of law. It is now universally agreed, that corporations have such powers, and such only, as the act creating them confers ; and are confined to the exercise of those expressly granted, and such incidental powers as are necessary to carry into effect those expressly conferred. In the expressive language of C. J. Marshall, in *Head* v. *The Providence Ins. Co.*, 2 Cr. R. 127, " The act of incorporation is to them an enabling act ; it gives them all the power they possess ; it enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated." And again, in *Dartmouth College* v. *Woodard*, 4 Wheat. 518, " Being the mere creature of law, it [the corporation] possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence." In no State of the Union have these principles been adhered to with more unyielding tenacity than in this. *Gallia Co.* v. *Holcomb*, 7 O. R. 232, Pt. 1 ; *Bank of Chillicothe* v. *Town of Chillicothe*, 7 O. R. 31, Pt. 2 ; *Bank of Chillicothe* v. *Swayne*, 8 O. R. 257 ; *Bartholomew* v. *Bently*, 1 O. St. R. 41.

The act of incorporation, like any other statute, should be construed in such manner as will best answer the intention of the Legislature ; and all its parts should, if possible, be made subservient to, and in harmony with, the leading purposes and objects intended to be accomplished, and for which the corporation is created. To effect this, the whole must be considered and construed together, with direct reference to those purposes and objects, and all its minor and incide. tal provisions be so used as to promote them. To dissect it into parts, and seize upon isolated

.expressions upon which to ingraft independent powers, not in harmony with, or necessary to attain the main design, is, in almost every case, to defeat the intention of the General Assembly. *The People* v. *Utica Ins. Co.*, 15 J. R. 380.

The power to contract and be contracted with, is one of the common law incidents of a corporation. Unless expressly restrained by its charter, every corporation has the incidental power to make any contract, and evidence it by any instrument, that may be necessary and proper to accomplish the objects for which it is created. A note or bill, therefore, made or received by such a corporation, is, *prima facie*, within its corporate powers, and, therefore, valid. " The presumption is always in favor of the validity of the contract ; or, in other words, it will be presumed that the debt was due, or the note or other security given in the lawful course of business, until the contrary is shown." Ang. & Ames on Corp. 198 ; *N. Y. Fireman's Ins. Co.* v. *Sturges*, 2 Cow. R. 664 ; *Barker* v. *Mechanics' Fire Ins. Co.*, 3 Wend. R. 94. But when such a transaction is drawn in question, it is always competent to show that it was given or taken for a purpose not authorized, and when shown, the contract is void, and the instrument a nullity. The principle is thus stated by the elementary authors to which I have referred, Ch. 8, § 12 : " A corporation and an individual stand upon very different footing. The latter, existing for the *general* good of society, may do all acts and make all contracts, which are not, in the eye of the law, inconsistent with this great purpose of his creation ; whereas, the former, having been created for a specific purpose, can not only make no contracts forbidden by its charter, which is, as it were, the law of its nature, but in general can make no contract which is not necessary, either directly or indirectly, to enable it to answer that purpose." And again: " When the charter, or act of incorporation, and valid statutory law, are silent as to what contracts a corporatiom may make, as a general rule, it has power to make all such contracts as are necessary. and usual in the course of business, as means to enable it to attain the object for which it was created, *and none other.*" And Mr. Justice Story, in treating upon the power of corporations to become

parties to negotiable paper, says: " Where the drawing, indorsing, or accepting such bills, is obviously foreign to the purposes' of the charter, or repugnant thereto, then the act becomes a nullity, and not binding upon the corporation." Story on Bills, sec. 79.

These doctrines are supported by a multitude of adjudged cases. *Broughton* v. *Manchester Water Works,* 3 Barn. & Ald. 1; *Munn* v. *Commission Co.,* 15 J. R. 44; *N. Y. Fireman's Ins. Co.* v. *Ely,* 2 Cow. R. 664; *Lane* v. *Bennett,* 5 Conn. 574; *Philadelphia Loan Co.* v. *Towner,* 13 Conn. R. 249; *Korn* v. *Mer. As. So.,* 6 Cranch 199; *Bank of Chillicothe* v. *Swayne,* 8 O. R. 257; *McCullough* v. *Moss,* 5 Denio 567.

And, in *Slank* v. *The Highgate Archway Company,* 5 Taunt. R. 792, and *N. Y. Fireman's Ins. Co.* v. *Sturges,* 2 Cow. 664, it was held, that where a corporation is authorized to raise money on promissory notes for a particular purpose, or may receive notes in the course of its proper business, evidence may be admitted in the one case in favor, and in the other against the corporation, to impeach the notes, by showing that they were issued for another purpose, or received in the course of business improper, or forbidden to it.

In the light of these principles, which permit the fullest inquiry into the true nature of the transaction, we are now prepared to ask the direct question, upon which the decision of this case depends — Does the charter of this company empower it to purchase, upon credit, the negotiable paper of one insured by it, and entitled to indemnity for a loss, for the purpose of paying or setting off the paper against the claim? I am aware that the defendant's counsel does not treat the settlement of this question as decisive of the case. He insists that it is quite immaterial whether the corporation had power to make the agreement or not; that the indorsement, so far as it operates to transfer the title, is an *executed* contract, and has invested the corporation with the legal interest in the paper; and that it is of no importance to the plaintiffs, whether they pay an acknowledged indebtedness to the indorser or indorsee. In short, whether the corporation could bind itself by the executory part of the agreement or not, so far

as it is executed, it cannot be disturbed. If the transaction had taken place between natural persons, and the objection related to its legality, this argument might be altogether unanswerable ; but in its application to the acts of a corporation, it begs the very question at issue, and assumes as undoubted, what has been most explicitly negatived by repeated decisions of this court. The contract of indorsement, like every other, must have parties. Without two parties, competent to contract, there can be no agreement by which the one can lose, and the other acquire, the title to negotiable paper. The powers and capacities of a corporation must be derived from the law of its creation, or they do not exist. If a fair construction of its charter does not confer the power, it is incompetent to become a party to the contract of indorsement, and without capacity to take or hold the title. As well might a dead man, by the mere act of the indorser, be invested with the legal interest as a corporation, which only lives for the purposes and objects intended by the Legislature. Beyond these limits it has no existence, and its acts are neither more nor less than a nullity. It was upon this precise distinction between corporations and natural persons, that the case of *The Bank of Chillicothe* v. *Swayne*, and other kindred cases, have been decided in this State. As was said in that case : — " This contract is *void*, not because the rate of interest is greater than the rate allowed by the general law of the land, *but because it is such a contract as the plaintiffs had no capacity or power to make.*"

We must, therefore, find in the charter the power to make *this* contract, or no contract has been made. We must there find a capacity given to take and hold the title to these notes, in virtue of this contract, or the corporation has no title. That this power or capacity is *expressly* given, is not pretended. Is it a necessary incident to any express power ? But two provisions of the charter have been brought to our notice, to which it may be referred. By the 2d section, the corporation is authorized to take security from stockholders, for deferred payments of stock, " by indorsed notes, payable on demand, or other property or stocks, to be approved by the board of directors." The 6th section provides : — " It shall be lawful for such company to *invest*

all or any part of their capital stock, money, funds, or other property, in such a way as the directors may deem best for the safety of the capital and interest of the stockholders; and may, therefore, sell and dispose of any or all interest which the company may have acquired by such investment."

The provisions of the second section do not require a single remark. They simply authorize the corporation to take security for unpaid stock. The persons from whom, and the purpose for which, it is to be taken, are all definitely stated; and none of them bear the most remote relation to the present transaction. No doubt can be entertained as to the object of the 6th section. The power of the investment therein conferred was designed to enable the company to make a profitable use of its surplus funds, by placing them at interest, with a view to their safety and the interest of the stockholders. But how the purchase, upon credit, of the promissory notes of one entitled to indemnity from the company, involving the use of no such funds, can be regarded as a fair execution of this power, is not readily perceived. Indeed, we are very clear, that it is not only without the limits of the charter, but directly opposed to its leading objects. We are not to assume, that this corporation was created for the mere benefit of the stockholders. The General Assembly must be supposed to have had a view to the public good, when they authorized the company to make contracts of indemnity against the calamities of fire. They must be presumed to have known, that the largest class of persons likely to avail themselves of this security would be merchants, whose all was invested in perishable property, and whose earnings, for years, might be destroyed in an hour; and whose credit must, of necessity, suffer unless prompt payment was made.

To have furnished inducements for withholding prompt payment, for the purpose of depressing the credit of the insured, thereby enabling the company to purchase his paper at a greater discount, would have been an act of most unaccountable folly and injustice. If it had been plainly proposed to arm the corporation with such a power, no one could for a moment suppose, that it

would have received any favor from any legislative body that ever sat in the State. To engraft it upon the charter by construction, instead of. conforming to the intention of the Legislature, would be to disregard and defeat it.

I should, therefore, have been of the opinion, that the company could not use its surplus funds even, in a manner so destructive to the purpose of its creation. But it is only necessary now to say, that it could not, under the power of investment, employ its credit to purchase claims for such a purpose; that it had no power to become a party to the contract of indorsement, by which it obtained the notes in question, and no capacity to take or hold the legal title. This conclusion is very fully supported, by the cases of *Smith* v. *The Alabama Life Ins. & Trust Co.*, 4 Ala. R. N. S. 558, and *Attorney General* v. *The Life & Fire Ins. Co.*, 9 Paige's Chy. R. 473.

In treating of the powers of corporations, I have not found it necessary to advert to a class of cases in which the corporation, in favor of innocent third persons, has been estopped to deny its corporate powers; there being nothing in this case to give application to those doctrines.

2. It becomes unnecessary to consider the further question, as to the right of the defendants to use these notes as a set off, under the conditional agreement upon which they were obtained. I shall only add, that a set off can only be allowed for such claims as, in good faith and absolutely, belonged to the party at the commencement of the action; and that it does not extend to claims purchased conditionally, for the purpose of using them as a set off, and with an agreement to return them to the seller if they are not so used. The statute was designed to avoid circuity of action, by enabling the defendant to obtain the benefit of his own joint claims against the plaintiff; but it would be a fraud upon it to allow him, in anticipation of a law-suit, to get the use merely of the claims of others, with which to defeat his adversary.

*The set off must be disallowed, and judgment given for the plaintiffs.*