Peck, J.
The only question we deem it necessary to consider, is, whether the Toledo Eire and Marine Insurance Company, by the acquisition of the dishonored acceptance of John S. Johnson, one of its stockholders, in the manner and under the circumstances detailed in the bill of exceptions, made him a debtor of the corporation, in the sense contemplated by the 13th section of its act of incorporation ?
It is too well settled to be disputed at this time, that the powers and capacities of a corporation are derived solely from its charter, which, like every other statute, is to be construed as an entirety, and with a view to ascertain the intention of the legislature, and if practicable, to harmonize its various provisions; and if upon a fair construction of its charter, the power to do the act or to make the contract under consideration, is not expressly given, nor clearly implied from the granted powers, the power can not be said to exist.
The counsel for defendant in error claim, that the acquisi *606 tion of the acceptance by the insurance company was within its corporate powers, 1. As being a loan under section 8 of its charter, which empowers the company, among other investments “to loan its moneys, funds', or other property, or any part thereof, to individuals or public corporations, on real or personal security.” ' 2. That, as a necessary incident to the powers expressly granted, the company had the right to receive such paper in payment of a debt due to it, and that, as shown by the evidence, the bill in question was received in part payment of moneys due.to the company on its deposit account with Ketcham, Berdan & Co.
The insurance company could, doubtless, have acquired a valid title to the acceptance in either these forms, if the real object of the acquisition was a loan of its money, or the collection of a debt. The validity of the transaction, depends more on its sv,batanee than its form, and it is not so much a question as to what the company might have done as what it did, in fact, do. ¡If it was received for the benefit of the company, and in furtherance of its legitimate objects, it was a valid transaction, simply because it was done in the course of its proper business, and in furtherance of the objects for which it was created;; but if it was a mere device, resorted to by the officers of the company, not for the benefit of the company itself, but for the individual>, benefit of one or more of the officers, or of third persons, it was an act outside of the legitimate business of the company, and not warranted by its charter.
The 18th section, which prohibits assignments of stock by stockholders in the institution, until all debts due from them to the company are paid or secured to its satisfaction, must be held to refer to such debts only, as were contracted or incurred in the proper business of the company, and in pursuance of its charter. It was designed as a protection to the company, against attempted evasions of liability by its stockholders, to be applied as the interests of the institution might require, and not to be used for the individual benefit of third persons, whether officers of the company or otherwise.
If, therefore,, it is fai ly deducible from the facts found by *607 the court and stated in the bill of exceptions, that the object of the transaction by which the insurance company became the owners and holders of the acceptance of Johnson, was to secure an application of the stock to the payment of that acceptance, for the individual benefit of one of its officers or of third persons, it was a transaction without the' proper business of the company, unwarranted by its charter, and a perversion of its corporate powers.
In section 267 of Angelí & Ames on Corporations, the learned commentators, speaking of a corporation other than a banking company, which may receive notes in the course of its business, remarks, that in such cases, “ evidence may be admitted in the one case in favor and in the other against the corporation, to impeach the notes, by showing that they were issued for another purpose, or received in a course of business improper or forbidden to.it” See also 2 Cowen (N. Y.), 644, 678.
The circumstances connected with the assignment of the bill by Ketcham, Berdan & Co., to the defendant in error as found by the court below, are substantially as follows: On the day said assignment was made, Johnson, the acceptor of the bill, as appeared from the books of said insurance company, was the owner of twenty shares of its capital stock fully paid, which shares, without the knowledge of the insurance company, he had previously .assigned for value to the plaintiff in error, with authority to transfer the same on the books of the company. At ’that time Johnson was not, in any way, indebted to said insurance company, and if the assignment, with authority to transfer the same, had been presented on that day, and prior to the alleged purchase of the bill, the company could have interposed no legal objection to-its transfer upon its books.
At that time the bill was the property of the payees, Ketcham, Berdan & Co., and all the parties liable thereon, the drawers and acceptor, had failed and become insolvent on the preceding day, which fact was then well known both to the payees and the insurance company. Ketcham, Berdan & Co., at the time, were bankers in Toledo, and had on de *608 posit, to the credit of the insurance company and subject to its checks, upward of $10,000. Ketcham, the senior partner, was also president of the insurance company, and, as •such, in connection with its secretary, authorized to conduct the business of the company, subject to the order and direction of the board of directors. Under these circumstances, the bill, then due, and of persons known to be insolvent, was indorsed by Ketcham, for Ketcham, Berdan & Co., and was taken and received by Ketcham as president of the insurance company, in conjunction with its secretary, and a credit given on the books of the company to Ketcham, Berdan & Co., who then were, and still are, perfectly solvent, for the face of the bill, and the costs of protest. No money was paid to Ketcham, Berdan & Co., but the deposit of the insurance company with them was lessened to that extent, and no steps were subsequently taken by the insurance company to charge Ketcham, Berdan & Co., as indorsers. On the second or third day thereafter, the certificate of stock and its assignment to the plaintiff in error, was presented to ■ said insurance company, and the company refused to permit the transfer to be made ■on its books.
This statement of the facts, found by the court, shows that the real object of the parties, was to reach and appropriate the stock to the payment of the acceptance held by Ketcham, Berdan & Co., so far as it might go, and not the negotiation of a loan, or the collection of a portion of the deposit account. It was not to obtain a loan of money. None was asked for, and none was received. It merely added one item to a large running account, which, for aught that appears, still remains open and unsettled. It could not be for the purpose of collecting a small portion of its deposit with Ketcham, Berdan & Co., who then were, and, as the court find, still are solvent, and no doubt seems to have been entertained of their solvency at that time.
The fact, that no steps were subsequently taken to fix the liability of Ketcham, Berdan & Co. upon their indorsement, also shows that the assignment, inter partes, was not regarded as a transfer of the real interest in the bill. All the other *609 parties upon it were insolvent, and the value of the stock was-uncertain; and, owing to the hazards of the business, liable-at any moment to become worthless. The par value of the stock did not exceed the face of the bill, and if the transfer was real, ordinary prudence would have required that .the liability of - the only parties upon it who were solvent, should have been secured to guard against ultimate loss. But if, notwithstanding the assignment, Ketcham, Berdan & Co. were the-real owners of the bill, there was no occasion to take any steps against them.
It-is apparent, we think, that it was nothing more than an. effort by Ketcham, Berdan & Co., with the aid of the insurance company, to obtain an advantage in the anticipated struggle over the effects of an insolvent debtor, an effort, in which the insurance company, without being interested in the result, was quite willing to aid.
If we are correct in this, the defendant in error had no-power or capacity, under its charter, to receive an assignment of the bill for any such purpose, and its actual reception, created no debt in its favor, which the company could enforce by a sequestration of his stock. It was an effort by the insurance company to secure, for a friend, an undue advantage over the other creditors of an insolvent debtor. It-was an attempt, by a third person, without the consent of the insolvent debtor, to prefer one of his creditors over the others.. No such power as this can be fairly inferred from the charter of the defendant in error, and it is also a. gross perversion of the 13th section of the act.
If, however, the purchase of the bill by the company was-not for the individual benefit of a third person, but for the purpose of subjecting Johnson’s stock, without his consent, to its repayment, and thereby relieve the company from an insolvent, or it may be, an undesirable stockholder,- we can not but think that such a purchase, for such, an object, would be a clear abuse of its corporate powers, and in fraud of Johnson’s rights. It would be an act of bad faith toward one equally interested with the other stockholders in the joint funds, to employ them for the purpose of depriving an em *610 'barrassed stockholder, without his consent, of all interest in the present, and the future fortunes of the corporation.
In Straus & Brother v. The Eagle Insurance Company, 5 Ohio St. Rep. 59, it was held, that the purchase of a note by an insurance company, organized under a similar charter, if made for the purpose of using the note as a setoff to a claim for- a loss arising under one of its policies, was an abuse of its corporate powers, and that the note could not be used for that purpose. The court, indeed, say in that case, that “ the contract” (i. e., the indorsement) “is void, and the instrument a nullity;” but while we concede that there was such an abuse of power, as should prevent the relief asked, we' are not prepared to hold, where the indorsement is one which, und'er certain circumstances, the company might lawfully •accept; in other words, where there was a mere abuse and not a total want of power, that such indorsement would be null and void for all purposes and as against all persons.
Judgment of the district court reversed, and of the common pleas affirmed.
Sutliee, C. J., and G-holson, Brinkerhoee and Scott, J J., concurred.