WILLIAM HAYS, OTHO L. HAYS AND WILLIAM FAIL v. THE GALION GAS LIGHT AND COAL COMPANY.

1. A mortgagee, who is a trustee for the holders of promissory notes secured by mortgage, is, in an action to foreclose the mortgage, a proper party plaintiff under section 27 of the Code of Civil Procedure, although he owns, in his own right, no part of the mortgage debt.

2. The relation of trustee, in such case, need not appear upon the face of the notes or mortgage, in order to entitle such trustee to maintain the action.

3. A corporation organized under the general incorporation act of May 1, 1852, for the purpose of manufacturing and supplying gas to the inhabitants of a city or village, may borrow money to enable it to accomplish the legitimate objects of its creation, and secure the payment of the same, by note, and a mortgage of the corporate property.

ERROR to the District Court of Crawford county.

The original action was brought in the common pleas by William Hays as trustee, against the Galion Gas Light and Coal Oil Company, Martin Sponhauer, William Fail, Thomas B. Burgert, Otho L. Hays, Joseph Kesselmeier, Asa C. Squires and William H. Holmes, defendants, to foreclose a mortgage. The plaintiff stated in his petition, in substance, that the defendant, the Galion Gas Light and Coal Oil

Company, was a corporation organized and incorporated in 1859, under the laws of the state; that on the 1st day of January, 1862, being largely in debt and in great need of money, and for the purpose of raising money to pay its debts, and to enable it to manufacture and furnish gas, the company made and delivered to the plaintiff its sixty-five promissory notes, each for the sum of one hundred dollars, each bearing interest at six per cent., payable semi-annually, January 1st and July 1st of each year; principal and interest payable at the banking house of Atwood, Davis & Co., in Galion, Ohio; each note due in ten years from date, and each stipulating " that if any interest shall remain unpaid for ninety days after maturity and demand of payment, the principal sum shall immediately become due and payable." The notes, with coupons, representing the interest, were numbered from 1 to 65 inclusive, and were payable to William Hays or bearer. A mortgage to secure the payment of the notes and interest was executed by the company to William Hays, on the corporate property described in the petition. The mortgage was in the ordinary form of a mortgage given to secure payment of a debt to the mortgagee, not expressing upon its face that it was given to William Hays as trustee. But plaintiff alleged that the notes and the mortgage securing the same were made to him as trustee, and not as owner, and that he prosecuted the suit for the benefit of the holders of the notes; and that notes Nos. 1, 2, and 3 were held by the defendant William Fail, No. 6 by the defendant Martin Sponhauer, and all the others by the defendant Otho L. Hays. That demand of the interest due was made at the banking house named, and refused, more than ninety days prior to the commencement of the action. The other defendants claimed some lien on the mortgaged premises. A copy of the notes and mortgage were attached as exhibits, and made part of the petition; prayer for foreclosure of the mortgage, and that the proceeds of sale might be divided among defendants entitled to receive them, and for other equitable relief.

On the same day that the petition was filed, the defend-

ants Fail and Otho L. Hays, each filed an answer and cross petition claiming to own, respectively, that part of the debt of which they were alleged by the petition to be the owners, stating facts showing the debt was due by reason of the failure of the company to pay the interest due within ninety days after demand, and praying judgment and foreclosure of the company's equity in the mortgage. To the petition of the plaintiff—but not to either cross-petition—the company demurred on the ground that it did not state facts sufficient to constitute a cause of action. The defendants, Sponhauer, Squires, and Riblet, demurred to the answer and cross-petition of Otho L. Hays, on the ground that the facts stated were insufficient to constitute a cause of action, or defense, or counterclaim. This demurrer was also overruled, and no issue of fact being tendered by answer, the court gave judgment to Fail and Otho L. Hays for the amounts due them respectively, and ordered, in default of payment of the judgments within ten days from the rising of court, a sale of the mortgaged property. The company carried the case to the district court, where the judgment of the common pleas was reversed on the ground that, as the plaintiff, William Hays, did not own any portion of the mortgage debt, his petition did not state a cause of action.

*Otis, Adams & Russell,* for plaintiffs in error:

1. The plaintiff was the trustee of an express trust, and as such was authorized to bring the suit. See Code, sec. 27. The bondholders were not proper parties plaintiffs in the case. See *Coe, Trustee, etc.* v. *C. P. & I. R. R. Co.,* 10 Ohio St. 372–410.

2. The petition contains all the averments necessary to constitute a cause of action, as do the answers referred to, unless said gas light and coal oil company had no power to execute bonds and a mortgage, as is claimed by the defendants below. It is a familiar principle of law that all corporations have *implied* as well as *express* powers. See Abbott's Digest of the Law of Corporations, 670, sec. 40; Ib. 572, secs. 47, 48; Ib. 475, secs. 1, 8; 3 Md..

305 ; 44 N. H. 127 ; 1 Saxt. 541 ; 5 Ohio St. 59 ; Aug. and Ames on Corp. 198 ; *N. Y. Fireman's Ins. Co.* v. *Sturges*, 2 Cow. 664 ; *Barker* v. *Mechanics' Fire Ins. Co.*, 3 Wend. 94.

*S. R. Harris*, for defendant in error :

1. William Hays had no right to bring the suit in common pleas. On this point we quote the statute, S. & C. 95, 325 : " Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 27."

· The parties holding the bonds, therefore, could only sue, they being " the real parties in interest." Parties collaterally or incidentally interested are proper defendants. Hays, we claim, found no authority to sue under section 27. Referring to that section, and to his petition, we fail to find any averment that brings him within section 27.

He is neither an executor, administrator, guardian, trustee of an express trust, nor a person with whom or in whose name a contract is made for the benefit of another, so as to enable him to bring the action without joining with him the person for whose benefit it is presented.

He was not trustee of an express trust. He alleges no such trust, and the bonds and mortgage would contradict such an allegation if he had made it.

2. We maintain that the bonds and mortgage sued upon had no validity, and, being against a corporation organized under a general law, all the world are bound to take notice of their infirmity.

It has " power to take by deed and hold such real estate as is necessary for its legitimate business." S. & C. 320, sec. 131. But it requires special authority of law to empower corporations to issue bonds or execute mortgages. Abbott's Digest of Corp. 87, sec. 12 ; Ib. 117, secs. 9, 17.

BOYNTON, J. The record discloses the fact that the district court reversed the judgment of the common pleas, and sustained the demurrer to the petition, on the ground that " said petition shows that the said defendant in error, Wil-

liam Hays, has no interest whatever in the notes and mort-gage mentioned in said petition."

It is proper to state that no judgment was rendered in the court of common pleas in favor of William Hays upon the notes, the judgment rendered being in favor of Otho L. Hays and William Fail on their respective cross-petitions.

The position assumed as a predicate for reversal must have been, in accordance with what is now claimed by the defend-ants, that these judgments were improperly rendered,because the defendants for whom they were rendered, were not prop-erly in court, inasmuch as the petition did not state a cause of action in favor of the plaintiff, William Hays. It is, how-ever, now claimed that the judgment of reversal in the dis-trict court may, and ought to be, sustained on either of three grounds. First, on the ground mentioned, that the plaintiff below had no interest in the notes and mortgage, and there-fore could not maintain the action. Secondly, that the Galion Gas Light and Coal Oil Company had no corporate power to borrow money and execute notes and a mortgage of the corporate property, to secure the payment of the money borrowed. And thirdly, if it had such power, that the notes and mortgage were defectively executed, and therefore inop-erative. This last claim of the defendant in error is easily disposed of. The questions were all raised by demurrer; and the petition alleges that the "company, under its corporate seal, made and delivered to this plaintiff sixty-five promis-sory notes in writing of that date, and the note, a copy of which was attached as an exhibit, shows the notes to have been executed as follows:

"In testimony whereof, said company have caused their corporate seal to be attached hereto, and signed by their president, and attested by their secretary, this 1st day of January, A. D. 1862.

[SEAL OF COMPANY.]        "JACOB RIBLET, *President*

"MARTIN SPONHAUER, *Sec'y.*"

The mortgage was executed in a similar manner and duly acknowledged. We think it sufficiently appeared that both the notes and mortgage were properly executed.

Was the action in the common pleas properly brought in the name of William Hays as trustee? The petition alleged the fact to be that the company was largely in debt and in great need of money, and that for the purpose of raising money to pay its debts, and to enable it to manufacture and furnish gas, it executed and delivered the notes and mortgage to the plaintiff; that the notes and mortgage were made to him as trustee of the holders of the notes, and not as owner; and that the action was brought for their benefit. These allegations, upon demurrer, must be taken as true; and so taken, the question presents the ordinary case of a corporation in need of money to carry forward the legitimate business for which it was created, issuing its notes or bonds therefor to a trustee, and securing their payment by mortgage to him of the corporate property, other than its franchises. The trustee in such case is usually, if not always, selected and appointed by the company for the convenience and benefit of itself, and of those who may become the owners of its obligations. One mortgage to the trustee is all that is required, no matter how numerous the holders of the notes or bonds secured thereby. He is the representative of the common interests of all who may invest in the security. The right of the owner of the debt secured by the mortgage to be represented by him gives additional value to the security, and facilitates the collection of the debt upon its maturity, and consequently enables the company the more readily and easily to realize and obtain the loan desired. It is not infrequently the case, especially in the business of great corporations, that the holders of the bonds are so numerous that it would be not merely inconvenient, but utterly impracticable, to bring them all before the court in a proceeding to foreclose the equity of redemption. Doubtless this is one of the considerations that gave rise to the rule held in *Coe* v. *The Columbus, Piqua and Indiana R. R. Co.,* 10 Ohio St. 372, that the bondholders, when numerous, were, in an action for foreclosure, neither necessary nor proper parties. It is, however, said by counsel for the de-

fendant that the plaintiff below was not a trustee of an express trust, nor a person with whom or in whose name the contract was made for the benefit of another, and that the plaintiff made no such allegation; and that, if he did, the written instruments would contradict him. The last clause of this proposition is not correct, and the first begs the very question at issue. The vice of the argument consists in the supposed necessity that the notes or mortgage should contain upon their or its face the evidence of such trust. It is true that it does not affirmatively appear upon the face of the notes or mortgage, that William Hays was a trustee for the holders of the notes; nor does it appear that he was not such trustee. If it is necessary that such trust should have been declared in writing, which question we do not decide, it nowhere appears that it was not so declared. If required to be in writing, it was not necessary that the notes or mortgage should contain the evidence of the trust. *Non constat,* that some other instrument in writing, properly executed, did not fully evidence the appointment of the trustee and define his duties. The fact stated in the petition, that the notes and mortgage were made to him as such trustee, presupposes, or implies the antecedent existence of whatever was legally necessary to constitute him such trustee. Being, therefore, a trustee for the purpose alleged, he was clearly a proper, if not a necessary party. He was either a trustee of an express trust, as that term is used in section 27 of the civil code, or he was a person with whom, or in whose name, a contract was made for the benefit of another; and in either case, he is expressly authorized to maintain the action. He is more than a mere mortgagee, holding the naked legal title to the mortgaged property. He not only holds the legal title, under which he could maintain an action to recover the possession, upon condition broken, of the property mortgaged, but he has been, by the agreement of the parties, constituted a trustee, and as such, presumptively clothed with the requisite power to act for the holders of the notes, and as the representative of their interests, in an

action to collect the debt when matured. Whether the owners of the debt, or beneficiaries under the trust, are numerous or not, he may so act or sue without uniting with him those for whose benefit the action is prosecuted. Code, sec. 27; *Coe* v. *The C. P. & I. R. R. Co.*, *supra*; Pom. on Remedies, sec. 174.

"The only concern of the company, after the amount due upon the security has been ascertained, is that at the time, or before any payment has been made, the bonds should be produced and canceled, if paid in full, or credited on their face with the amount paid. It would be the duty of the court to secure this protection against further liability to the company." 10 Ohio St. 410.

Had the sixty-five promissory notes in the present case been owned by sixty-five different persons instead of three, and the owner of one had brought an action to foreclose, making the remaining sixty-four parties defendant, the very necessity of the case, if the claim of the defendant is well made, would have required sixty-four cross-petitions in that action. To avoid this very condition of things, by providing adequate means of relief to all the parties in interest by an action less cumbersome and less expensive in the name of a common trustee, was a leading object of the provisions of the code regulating parties to a civil action.

Are the notes and mortgage void for want of power in the corporation to issue them?

The Galion Gas Light and Coal Oil Company was incorporated in 1859, under the act to provide for the creation and regulation of incorporated companies in the State of Ohio. 1 S. & C. 271. Section 49 of that act, in speaking of the persons organizing a gas company under it, declared that "they and their associates shall have the same general corporate powers as are provided in the 3d section of this act, and be subject to all the restrictions hereafter provided." Section 53 clothes the company with full power to manufacture and sell gas for public and private build-

XXIX—22

ings, and for other purposes, in cities, towns, and villages, and to lay conductors for conducting gas through the streets, lanes, alleys, and squares in such city, town, or village, with the consent of the municipal authorities, under prescribed regulations. The third section of the act provides, among other things, that, upon taking the steps necessary to incorporation, "they, and their associates, successors, and assigns, by the name and style provided in said certificate, shall thereafter be deemed a body corporate, with succession, with power to sue and be sued, plead and be impleaded, defend and be defended, contract and be contracted with, acquire and convey at pleasure all such real and personal estate as may be necessary and convenient to carry into effect the objects of the incorporation, . . . . and to do all needful acts to carry into effect the object for which it was created; and such company shall possess all the powers and be subject to all rules and restrictions provided by this act."

Here express power is conferred upon the company to make contracts; neither the kind of contracts, nor their subject-matter, nor the extent to which they may be made, is ascertained or defined, and hence the capacity or power to contract must have reference to and be limited by the nature of the corporate business engaged in. There is nothing in the act under which the defendant was incorporated which in terms denies or restricts the right to borrow money, and if such right does not exist, it is because of an implied inhibition growing out of the nature and character of the business the company was created to conduct and carry on.

In Green's Brice's Ultra Vires, 115, the rule is laid down as follows: "Corporations may borrow, without express authority in that behalf, provided the nature of their undertakings or concern be such as to render borrowing, if not actually indispensable, at least very useful, for the proper conduct of the same." This court has held substantially the same thing. *Strauss et al.* v. *Eagle Ins. Co.*, 5 Ohio St. 59. That every corporation, unless prohibited

expressly or impliedly by the nature and character of the business it was created to engage in, may borrow money to carry forward the legitimate objects of its incorporation, is a well-settled rule of law. 5 Ohio St. 59; *Curtis* v. *Leavitt*, 15 N. Y. 9; Green's Brice's Ultra Vires, *supra.*

And where a corporation has power to borrow, it may exercise such power, like natural persons, and evidence the debt by note, bond, or mortgage. This is established by a uniform current of authorities. *Straus* v. *Eagle Ins. Co., supra; Pennock* v. *Coe*, 23 How. 117; *Police Jury* v. *Britton*, 15 Wall. 570; *Monument National Bank* v. *Globe Works*, 101 Mass. 57; 19 Grattan, 354.

As there were no express restrictions or limitations upon the power of the defendant to borrow money in the act of incorporation, it remains to be seen whether there is a want of power to borrow, arising by implication, from the nature and character of the business and undertakings that it was created to carry on. The money for which the notes and mortgage in suit were given was needed to pay existing debts, and to carry forward the business of manufacturing and selling gas, the very object for which the corporate powers were conferred by the state, and acquired by the defendant. And it will be presumed, in the absence of proof to the contrary, that the debts existing when the loan was made, and to pay off and extinguish which the fund raised was in part to be applied, were properly incurred. And the appropriation of the borrowed fund, in part to the payment of such debts, and the residue to " enable the company to manufacture and sell gas," was a use of the fund in strict accordance with the character of the corporate business of the company. A loan of money for such purpose was clearly within its corporate power, and in entire harmony with the statute (1 S. & C. 309, sec. 90), which prohibits it from employing its " stocks, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." This conclusion renders unnecessary the consideration of the question of estoppel, which the facts

stated give rise to. It is, however, proper to remark that the defendant, in claiming exemption from corporate liability, and in insisting, as it does in argument, that to borrow, and give its notes and mortgage to evidence its obligation to pay, are in excess of and beyond its corporate functions and capacity, sets up its own usurpation of power to avoid the payment of what appears to be an honest debt. That this can be done may well be doubted. The rule seems well established that where a contract has been executed and fully performed, on the part either of the corporation or of the other contracting party, neither will be permitted to insist that the contract and such performance by one party were not within the corporate power of the company. *Bank of Chillicothe* v. *Town of Chillicothe*, 7 Ohio, 412; *Ex parte Chippendale*, 4 D. G. M. & G. 19; *Fishmongers' Company* v. *Robertson*, 5 McG. 131; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62.

Where the corporation, in the exercise of apparent power to borrow, secures from another a loan of money, on the faith that the power exists, it would be a miscarriage of justice to permit the company to escape liability on the ground that in the act of borrowing it transcended the limits of the power granted by its charter; especially would this be so where there is nothing on the face of the paper by which the debt is evidenced, showing the company to have overstepped the boundary line of corporate privilege in the act of borrowing, and where there is no notice of a want of power or capacity to borrow, and the money is loaned and the security taken on the faith of its existence.

The judgment of the district court is reversed, and that of the common pleas affirmed.