KANSAS INSURANCE COMPANY v. R. S. CRAFT, *et al.*

1. FIRE INSURANCE COMPANIES; *Investment of Funds; No Power to Purchase Claim against Policyholder, to Use as a Set-Off.* Under section 29 of chapter 93 of laws of 1871, page 225, which authorizes fire insurance companies to "invest their capital and funds accumulated in the course of business in bonds and mortgages," such an insurance·company has no power to purchase upon credit the mortgage-obligation of one insured by the company, and entitled to indemnity for a loss, for the purpose of setting off such mortgage against the policy.

2. ———— The purchase upon credit by an insurance company of the promissory notes or other obligations of one entitled to indemnity from the company, involving no investment of surplus funds, is not only without the limits of the company's charter, but directly opposed to its leading objects.

*Error from Marshall District Court.*

CRAFT, as assignee of Cummings, brought suit to recover the amount due upon a policy of insurance issued by the *Kansas Fire Insurance Co.* to Cummings upon a certain hotel building situated in Blue Rapids. This action was commenced in February 1875. Another action was then pending in the same court, commenced in July 1874, wherein the *Kansas Fire Insurance Co.* was plaintiff, and said Cummings, *Craft*, and others were defendants, wherein said *Insurance Company* sought to enforce and foreclose a certain mortgage given by one Hiscox to C. E. Olmstead, the payment of which had been assumed by Cummings before he assigned his insurance policy to *Craft*. These two actions were afterward consolidated, and tried together as one action, at the August Term 1875. The material facts, and the questions involved, are sufficiently stated in the opinion, *infra*. The district court gave judgment in favor of *Craft* for the full amount of the policy, and determined that the *Insurance Company* had no such interest in the mortgage as would enable it to set off the same against its indebtedness on its policy-contract. The *Insurance Company* brings the record here for review.

*J. W. English,* for plaintiff in error.

*B. P. Waggener,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are these. William Hiscock owned certain premises upon which was situated a hotel. This property he mortgaged to C. E. Olmstead. He then sold an undivided-half to Palmer Cummings, the latter, in part consideration therefor, agreeing to pay the mortgage. Cummings insured his interest in the Kansas Insurance Company. Olmstead, the mortgagee, insured his interest in the St. Joseph F. & M. Ins. Co. The building burned. The St. Jos. company paid Olmstead his policy, taking an assignment of his mortgage. It then assigned the mortgage to the Kansas Insurance Co., receiving as consideration therefor one dollar in cash, and a due-bill for $500. The mortgage-interest assigned was the same in amount as the policy in the Kansas Insurance Company, to-wit, $1,000. Cummings assigned his claim on the policy to Craft, but the assignment was not made until after the assignment of the mortgage to the Kansas Insurance Company.

Could the Kansas Insurance Company off-set the mortgage against the policy? No question is made of the validity of the mortgage, but it is insisted that it was *ultra vires* of the corporation to use its credit in purchasing obligations of the insured for the purpose of discharging its liabilities to him on its policy. It is not doubted that an insurance company may legally invest its funds in obligations, properly secured, of parties whom it has insured, and then in case of loss off-set the obligations against the policy. But here, after a loss, it goes into the market and buys upon credit an obligation of the insured, and proposes to discharge its liability therewith. Can this be tolerated? The question, in view of the immense insurance business of to-day, both fire and life, is one of no little importance. And it is one whose solution will largely affect the practical value of insurance. For if this is tolerated, it will be a constant temptation to insurance companies to withhold payment for the purpose of seeing whether obligations of the insured cannot be purchased at a discount, and by the very fact of nonpayment diminishing his credit,

and increasing the discount. It is of course a question whose solution depends upon the statute, for it cannot be doubted that the legislature may grant to them that unlimited control of their means and credit which will warrant a transaction like the one before us. Has it done so? It is elementary, that a corporation takes nothing by implication, that it possesses only the powers expressly granted, and those necessary for the execution of those expressly granted. "Being the mere creature of law, it (the corporation) possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence." Ch. J. Marshall, in *Dartmouth College v. Woodward*, 4 Wheat. 518. The buying up of the obligations of an insured, is no part of an insurance contract, nor essential to the due execution of the power to insure. But we are referred to § 29, p. 225, laws 1871, as granting the power to do that which was done in this case. That reads —

"It shall be lawful for any insurance company * * * to invest its capital and the funds accumulated in the course of its business or any part thereof in bonds and mortgages on real estate, * * * and to lend the same or any part thereof on the security of such stocks or bonds, * * * and to change and reinvest the same as occasion may from time to time require."

This authorizes an investment of capital and funds, nothing more. But here was no investment of capital or funds, but simply the use of its credit to purchase a mortgage. It exchanged its own obligation for the obligation of the insured — for the cash part of the consideration was merely nominal, and the real consideration was its due-bill. The jury found that the purchase was not as an investment, but for the purposes of an off-set. And the circumstances could lead to no other conclusion. The insurance company proved that Hiscock and Cummings were insolvent; and it appeared from the testimony of the secretary of the St. Jos. Ins. Co., that the lots, after the fire, were no security for the mortgage. Hence, there was nothing to induce a purchase as an investment. But an investment presupposes something in hand to invest,

some portion of capital or surplus funds, to be placed where it will be secure, and at the same time draw interest. But nothing of that kind took place here. If it had any funds, it did not use them in this purchase. All that it invested was its credit. Authorities are not wanting on this precise question. In the case of *Smith v. Alabama Life Ins. & Trust Co.*, 4 Ala. (N. S.) 558, it appeared that the company was authorized to invest its funds in bonds and mortgages. It gave its own bond payable in New York as sole consideration for a bond and mortgage it took from Smith. The latter was held void, and the transaction unauthorized by its charter. See also, *Ins. Co. v. Ely*, 5 Conn. 560; *F. & M. Bank v. Baldwin*, Sup. Court of Minn., reported in Al. Law Journal Dec. 9th 1876, p. 391. But a case still stronger than these, and almost identical with the one before us, is that of *Strauss v. Eagle Ins. Co.*, 5 Ohio St. 59. In that case the insurance company after a loss bought upon credit the obligations of the insured, and sought to off-set them against the policy. It had authority "to invest all or any part of its capital stock, money, funds or other property, in such a way as the directors may deem best, for the safety of the capital and interest of the stockholders," and such authority was relied upon to support the transaction. But the court held it *ultra vires*, and rendered judgment on the policy. The case is so clearly in point, and the views of that court so fully in harmony with our own, that we quote the following from their opinion:

"The power of the investment therein conferred was designed to enable the company to make a profitable use of its surplus funds, by placing them at interest, with a view to their safety and the interest of the stockholders. But how the purchase upon credit of the promissory notes of one entitled to indemnity from the company, involving the use of no such funds, can be regarded as a fair execution of this power, is not readily perceived. Indeed, we are very clear, that it is not only without the limits of the charter, but directly opposed to its leading objects. We are not to assume that this corporation was created for the mere benefit of the stockholders. The general assembly must be supposed to have had a view to the public good, when they authorized the

company to make contracts for indemnity against the calamities of fire. They must be presumed to have known, that the largest class of persons likely to avail themselves of this security would be merchants, whose all was invested in perishable property, and whose earnings for years might be destroyed in an hour; and whose credit must, of necessity, suffer unless prompt payment was made. To have furnished inducements for withholding prompt payment, for the purpose of depressing the credit of the insured, thereby enabling the company to purchase his paper at a greater discount, would have been an act of most unaccountable folly and injustice. If it had been plainly proposed to arm the corporation with such a power, no one could for a moment suppose that it would have received any favor from any legislative body that ever sat in the state. To engraft it upon the charter by construction, instead of conforming to the intention of the legislature, would be to disregard and defeat it. I should therefore have been of opinion that the company could not use its surplus funds, even in a manner so destructive to the purpose of its creation. But it is only necessary now to say, that it could not, under the power of investment, employ its credit to purchase claims for such a purpose; that it had no power to become a party to the contract of indorsement, by which it obtained the notes in question, and no capacity to take or hold the legal title."

We see no other question in the case not already decided by this court.

The judgment will therefore be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting in the case.