HUMBOLDT MIN. CO. v. AMERICAN MANUFACTURING, MINING & MILLING CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

No. 107.

1. JUDGMENT ON PLEADINGS—RENDITION AND ENTRY.
    Rev. St. Ohio, § 5328, which provides that judgment may be rendered for the party entitled thereto on the statement in the pleadings, although a verdict has been found against him, authorizes such a judgment before verdict.

2. CORPORATIONS—GUARANTY OF CONTRACT OF OTHER CORPORATION.
    A corporation organized under the law of Ohio for the purpose of making ironwork for mining plants has not power to guaranty the performance of another's contract for the erection of a mining plant, and the accompanying warranties, on the ground that the guaranty will secure a sale of the ironwork used in the plant.

3. SAME—ESTOPPEL.
    Performance of such contract on the part of the party to whom the guaranty is given does not estop the corporation from denying its power to give the guaranty.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This was a suit by the Humboldt Mining Company against the American Manufacturing, Mining & Milling Company and the Variety Iron-Works Company for breach of contract. A motion by the iron-works company for judgment in its favor on the pleadings was granted. Plaintiff brought error.

The Humboldt Mining Company filed its petition in the circuit court for the northern district of Ohio against the American Manufacturing, Mining & Milling Company and the Variety Iron-Works Company, in which it alleged that it was a corporation duly organized according to law, and a citizen of the state of Tennessee; that the defendant the American Manufacturing, Mining & Milling Company, hereafter referred to as the "Milling Company," was a corporation duly organized under the laws of Colorado, with its principal place of business in Cleveland, Ohio; that the defendant the Variety Iron-Works Company, hereafter referred to as the "Iron-Works Company," was a corporation organized under the laws of Ohio, with its principal place of business at Cleveland, Ohio; that the plaintiff, being the owner of a silver mine in Colorado, made a contract with the defendant the milling company to construct for it a crushing, pulverizing, and concentrating plant; that the milling company warranted that the plant should break and pulverize the plaintiff's ore to a certain degree of fineness at the rate of 50 tons for every 24 hours, that it could be operated with a certain number of men, and that it should be shipped and erected for use within a certain time, and further stipulated that, if the riffles which were to be furnished as part of the plant should fail to do the work warranted, satisfactory substitutes therefor should be at once supplied.

The allegations with reference to the iron-works company in the petition were as follows:

"The said defendant the Variety Iron-Works Company was organized for the purpose, amongst other things, of manufacturing and selling ironwork for such plants, and the said defendants agreed with each other that, if said contract should be entered into, it, the said Variety Iron-Works Company, would be permitted to furnish to its codefendant the ironwork for said plant at an agreed price. In consideration thereof, and of the profit to be derived therefrom, and of the said contract between the plaintiff and its said codefendant, it, the said Variety Iron-Works Company, before the delivery of said contract to plaintiff, executed an agreement at the foot thereof, whereby it, the Variety Iron-Works Company, guarantied to plaintiff the faithful performance by the said American Manufacturing, Mining and Milling Company of said contract; that the said Variety Iron-Works Company was permitted to furnish said ironwork, and the same was furnished as hereinafter stated."

The petition then averred that the plaintiff performed all of the contract on its part, but the milling company failed in many respects to comply with its contract; that the plant which was put up proved to be defective, and failed to conform to the requirements and warranties, and was wholly unfit and valueless for the purpose it was furnished,—all to the damage of plaintiff in the sum of $50,000, for which plaintiff asked judgment against both defendants.

A demurrer was filed to the petition by the iron-works company, but the court does not seem to have made any ruling upon it. Subsequently the iron-works company filed a separate answer and an amended answer. The latter contained several defenses, of which the only one here requiring notice was as follows: "For a second defense these defendants say that they admit that the secretary of the Variety Iron-Works Company signed the agreement of guaranty which appears upon the said contract, whereby it, the Variety Iron-Works Company, purported to guaranty to the plaintiff the faithful performance by the said American Manufacturing, Mining and Milling Company of the said contract, and that the copy of the said pretended agreement of guaranty which appears upon the petition is a true copy of the agreement attached to the said contract. They deny, however, that the contract was the contract of the defendant the Variety Iron-Works Company. They aver that the said Variety Iron-Works Company had no corporate power to enter into said pretended agreement of guaranty, and that the admitted execution of the

same was beyond the corporate power of the said Variety Iron-Works Company, and was wholly void."

A reply was filed to the answer of the iron-works company by the plaintiff, but its averments had no bearing upon the defense of ultra vires.

After the pleadings were completed, the iron-works company made a motion that on the pleadings judgment be entered in its favor. The court granted the motion, and accordingly entered the judgment which it is now sought to review by this writ of error.

Gilbert & Hills and Morgan & McFarland, for appellant.

E. A. Angell (J. H. Webster, on the brief), for appellees.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The first objection made to the judgment is that under the Code of Ohio there was no power in the circuit court to grant the motion for judgment upon the pleadings.

Section 5312 of the Revised Statutes of Ohio, which is part of the Code of Civil Procedure, provides that:

"In an action against several defendants, the court may render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper."

It is perfectly obvious that in this case a judgment might be taken against the principal and in favor of the guarantor, and therefore that section 5312 applies.

Section 5328 of the Revised Statutes provides that:

"When, upon the statement in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party."

It was in accordance with this section that the court below entered the judgment here complained of. The contention on behalf of the plaintiff is that this section applies only after a verdict has been rendered, and that until then the court has no power to enter judgment. There is no such limitation in the words of the section, and it would seem to be absurd that when, upon the statements of the parties to the pleadings, one or the other is entitled to judgment, the court should go through the useless ceremony of submitting to a jury immaterial issues in order to enter judgment upon the pleadings without regard to the verdict.

The question in the case is whether the averment of the petition in reference to the corporate character of the iron-works company, read in the light of the corporation laws of Ohio, shows the guaranty sued on to be in excess of the powers of the company. Corporations, in Ohio, since the adoption of the constitution of 1851, have been organized under general laws. By the general incorporation act of May 1, 1852, provision was made for the incorporation of different kinds of companies, classified according to their objects. Section 63 et seq. of that act provided specifically for the incorporation of manufacturing corporations. Subsequently the same sections were made applicable to a great variety of companies which were not manufacturing corporations. In 1880, when the statutes of Ohio were

embodied in a revision, it was thought best to repeal old section 63 of the act of 1852, and its amendments, and to substitute what is now section 3235 of the Revised Statutes, which reads as follows:

"Corporations may be formed in the manner provided in this chapter for any purpose for which individuals may lawfully associate themselves except for dealing in real estate or carrying on professional business; and if the organization is for profit, it must have a capital stock."

Under this section all manufacturing corporations of Ohio are formed. The manner in which corporation is effected may be seen from the following sections of the same chapter:

"Sec. 3236. Any number of persons not less than five, a majority of whom are citizens of this state, desiring to become incorporated shall subscribe and acknowledge, before an officer authorized to take acknowledgments of deeds, articles of incorporation the form of which shall be prescribed by the secretary of state which must contain: 1. The name of the corporation, which shall begin with the word 'The' and end with the word 'Company' unless the organization is not for profit. 2. The place where it is to be located, or where its principal business is to be transacted. 3. The purpose for which it is formed. 4. The amount of its capital stock, if it is to have capital stock, and the number of shares into which the stock is divided. * * *

"Sec. 3238. The official character of the officer before whom the acknowledgment of articles of incorporation is made shall be certified by the clerk of the court of common pleas of the county in which the acknowledgment is taken and the articles shall be filed in the office of the secretary of state, who shall record the same and a copy duly certified by him shall be prima facie evidence of (the) existence of such corporation. * * *

"Sec. 3239. Upon such filing of the articles of incorporation the persons who subscribed the same, their associates, successors and assigns, by the name and style provided therein, shall thereafter be deemed a body corporate, with succession and power to sue and be sued, contract and be contracted with, acquire and convey at pleasure all such real or personal estate as may be necessary and convenient to carry into effect the objects of the incorporation, to make and use a comn. and the same to alter at pleasure, and to do all needful acts to carry into execution the objects for which it was created."

The foregoing sections are part of chapter 1, tit. 2, of the Revised Statutes, concerning corporations in general, both those for profit and those not for profit; and the subsequent chapters of the same title relate to corporations for particular purposes. The last section of the first chapter provides that the provisions of this chapter do not apply when special provision is made in any subsequent chapter, but that the special provision shall govern, unless it clearly appears that the provisions are cumulative. State v. Live-Stock Co., 38 Ohio St. ? ? There are in subsequent chapters of the title several sections specifically referring to certain kinds of manufacturing corporations and their powers and limitations. See sections 3855, 3857, 3859, 3862–3866. But of these the only section which could possibly have any relevancy to this case is section 3862, reading as follows:

"Mining and manufacturing companies engaged in the manufacture of articles in the whole of iron or part of iron and wood may take, hold and convey such real estate and personal estate as is necessary or convenient for the purpose for which it was incorporated, and may carry on its business or so much thereof as is convenient in any county in this state, or beyond the limits of this state and may there hold any real or personal estate necessary or convenient for conducting the same."

It is obvious from the foregoing that, after the incorporators shall have stated in the articles the purpose for which the company is to be formed, its powers are fixed by general laws.

We come now to the averments· of the petition as to the purpose for which the company whose powers are in question was organized. The pleader in the petition was attempting to state facts with reference to the iron-works company which would show the existence of the power to make the guaranty. The two facts thus stated were: First, that the company was organized for the purpose of manufacturing ironwork for mining plants; and, second, that it was profitable to the company to make the guaranty, because thereby it secured a customer. The fact that the pleader did not specify what were the other purposes for which the company was formed, either in the petition or even in the reply after the issue of ultra vires had been made by answer, excludes the hypothesis that the other purposes so indefinitely referred to furnished any justification for the exercise of the power of guaranty. While, under section 5096, Rev. St. of the Ohio Code, pleadings are to be liberally construed with a view to·substantial justice, this does not mean that every equivocal word or phrase is to be construed in favor of the pleader. All that it means is that the language of the pleader is to be given a fair and reasonable construction, without regard to technical rules. McCurdy v. Baughman, 43 Ohio St. 78, 1 N. E. 93; Robinson·v. Greenville, 42 Ohio St. 625; Crooks v. Finney, 39 Ohio St. 57. The fair and reasonable construction of the petition is that the Variety Iron-Works Company was organized for the purpose of manufacturing ironwork, and therefore had by law the power ·to make the guaranty in question. The question presented on the pleadings, therefore, is whether a corporation organized under the laws of Ohio for the purpose of making ironwork for mining· plants may guaranty the performance of another's contract for the erection of a mining plant, and the accompanying warranties, on the ground that the guaranty will secure a sale of the ironwork to be used in the plant. The warranties covered parts of the contract in the fulfillment of which the iron works would and could exercise no control, and in which it had no such direct ·and legitimate interest as to warrant its risking its capital therein. If the warranties had only covered the character of the ironwork furnished by the guarantor company, a different question might be presented. As it is, we think such a guaranty not within the incidental powers of a manufacturing corporation.· The stockholders of the corporation had the right, in making their investments, to rely upon it that no part of the funds of the corporation, whose stockholders they were becoming, should be risked in the business of another corporation, over which they should ·have no control. The restriction by the state was that the manufacturing business in which they were to engage should be carried on through the sole agency of the corporation which they were forming.

Section 3266 of the Revised Statutes of Ohio provides that "no corporation shall employ its stocks, means, assets or other property directly or indirectly for any other purpose whatever than to accomplish the legitimate objects of its creation."

There is no court in the country which has been stricter in enforcing the principle that corporations are prohibited from exercising any powers which are not expressly conferred upon them in their charters, or which are not fairly incidental to the express objects of their creation, than the supreme court of Ohio.   In Valley Ry. Co. v. Lake Erie Iron Co., 46 Ohio St. 50, 18 N. E. 486, it was held that a company incorporated for the purpose of manufacturing could not subscribe to the capital stock of another, and that a subscription so made was ultra vires, and void.   The company to whom the subscription was made was a railroad company, and the courts said:

"No claim is made by the defendant that the iron company had any express statutory authority to use its capital or assets in aid of the construction of a railroad by subscription to its capital stock or otherwise.   The only averment as to this is that it, the iron company, conceived that it would be benefited by the reduction of the price of coal at Cleveland, its place of business, and the market which the construction of the road would afford for its manufactures, and by these considerations was induced to make the subscription.   But all this can be of no avail, in the face, at least, of the prohibition contained in section 3266 of the Revised Statutes, that 'no corporation shall employ its stocks, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation.' "

In Coppin v. Greenlees & Ransom Co., 38 Ohio St. 275, it was held that, under the law and constitution of Ohio, a corporation organized for manufacturing purposes had no power to acquire or convey its own stock except in satisfaction of a debt due to it.   See, also, Franklin Bank v. Commercial Bank, 36 Ohio St. 350.

In Straus v. Insurance Co., 5 Ohio St. 59, it was held that an insurance company, authorized by its charter to invest its funds and capital stock as should be deemed best by the directors for the safety of the capital and interest of the stockholders, had no power to purchase upon credit a promissory note of one insured by the company, and entitled to indemnity for the loss, for the purpose of setting off such note against the claim.   In this, which is a leading Ohio case upon the subject of corporate powers, Judge Ranney lays down the principle as follows:

"It is now universally agreed that corporations have such powers, and such only, as the act creating them confers, and are confined to the exercise of those expressly granted, and such incidental powers as are necessary to carry into effect those expressly conferred.   * * *   In no state of the Union have these principles been adhered to with more unyielding tenacity than in this. Com'rs v. Holcomb, 7 Ohio, 232 (pt. 1); Bank of Chillicothe v. Town of Chillicothe, Id. 31 (pt. 2); Bank v. Swayne, 8 Ohio, 257; Bartholomew v. Bentley, 1 Ohio St. 41."

The general rule in this country and in England is that one corporation is impliedly prohibited from guaranteeing the contract or debt of another.   Mor. Priv. Corp. § 423; McLellan v. File Works, 56 Mich. 579, 23 N. W. 321; Aetna Nat. Bank v. Charter Oak Life Ins. Co., 50 Conn. 167; National Park Bank v. German-American Mut. Warehouse & Security Co., 116 N. Y. 292, 22 N. E. 567; Madison, W. & M. Plank-Road Co. v. Watertown & P. Plank-Road Co., 7 Wis. 59; Davis v. Railroad Co., 131 Mass. 258; Colman v. Railway Co., 10 Beav. 1; Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 290, 6 Sup. Ct. 1094; Marble Co. v. Harvey, 92 Tenn. 115, 20 S. W. 427.

The objection to the guaranty is that it risks the funds of the company in a different enterprise and business under the control of another and different person or corporation, contrary to what its stockholders, its creditors, and the state have the right from its charter to expect.

We have examined the question of the power of corporations to become guarantors of other persons and corporations in the case of Marbury v. Land Co. (decided at this session) 62 Fed. 335. In that case we upheld the power to guaranty the obligations sued on by reason of the existence of certain peculiar and unusual powers in the guarantor company of consolidation with the company whose obligations were guarantied, but it is pointed out in that decision that ordinarily it is not within the power of a trading corporation to guaranty the obligations of another.

For these reasons we think that the contract of guaranty by the Variety Iron-Works Company set up in the petition was beyond the power of that company, and therefore that it could not be held to any liability thereon.

It is said, however, that the contract has been performed on behalf of the plaintiff, and, therefore, that the defendant is estopped to deny its power to make it. We do not think that any such principle has application here. Strictly speaking, a corporation is never estopped to deny its power to make a contract where the extent of its powers and of the facts relevant thereto were or should have been known to the parties seeking to enforce the contract when it was entered into. In cases where property has been received or money paid to the corporation seeking to avoid the obligations of an ultra vires contract, the person delivering the property or paying the money has the remedy of recovering back that which was given to the corporation on the faith of the ultra vires contract. This, however, as has been said several times by the supreme court of the United States, is not a recovery on the contract, but is, in effect, an avoiding of the contract, and a restoration of the parties to the status quo ante. St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 393, 12 Sup. Ct. 953; Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478. In this case no money or property was paid by the plaintiff to the guarantor defendant, and there is no way by which the parties can be restored to their condition before the contract was entered into and performed. However this may be, the suit here is upon the contract, and, as the contract is void, it gives the plaintiff no right of action against the corporation. For these reasons the judgment of the circuit court is affirmed, with costs.