Shepley *v.* Atlantic & St. Lawrence R. R. Co.

---

ETHER SHEPLEY & *als.*, *in Eq.*, *versus* ATLANTIC & ST. LAWRENCE R. R. Co. & G. T. RAILWAY Co. OF CANADA.

A railroad company, pursuant to votes of their stockholders and directors, conveyed all their property and franchises to three trustees and their survivors and successors, by deed conditioned to be void upon payment of certain bonds issued by the corporation. It was stipulated in the deed that, if the company shall at any time fail to pay the interest or principal of the bonds according to their tenor, the mortgagees may take the mortgaged property into their actual possession, manage and control the same, and apply the net income and proceeds thereof to the payment of such interest and principal. On demurrer to a bill brought by the trustees against the corporation to obtain possession, — *Held,* —

1. That the mortgage having been ratified by statute, is valid; —
2. That, whether it was valid prior to such ratification, *quere ;* —
3. That this Court has jurisdiction to decree a specific performance of the stipulation in the mortgage, authorizing the trustees to take possession of the mortgaged property for non-payment of the bonds; and, —
4. That a bill in equity is a proper form of proceeding to obtain it.

BILL IN EQUITY, commenced by Ether Shepley, John Rand and George F. Shepley, trustees under a mortgage executed by the Atlantic & St. Lawrence Railroad Co., on the first day of April, 1851, a copy of which was annexed to the bill.

The mortgage conveyed to Ether Shepley, John Anderson and John Rand, and to their survivors and successors, "all the railroad of the Atlantic & St. Lawrence Railroad Co. situated in the counties of Cumberland and Oxford, in the State of Maine, and continued, and to be continued, through the northern parts of the States of New Hampshire and Vermont, including all the land and right of way taken and held by said company in the States aforesaid, for the purposes of its road, and all the franchise of said company granted by the several States aforesaid, together with all the real estate of said company situated in the said counties of Cumberland and Oxford and in * * the States of New Hampshire and Vermont, and all the rails and superstructure, cars, engines and other furniture, machinery and equipment of said road, and all personal property of said company, appertaining to, and connected with the customary use and working of said railroad and the machinery thereof, subject to the prior liens of the city of Portland upon the said railroad, and all the property and franchises of said company created by the several Acts of the Legislature of Maine, passed August 1, 1848, and July 27, 1850, and subject to a mortgage dated Feb. 3, 1851, executed and delivered by said company to said city of Portland, under the provisions of the Act of July 27, 1850," &c. "To have and to hold the premises, with all the privileges and appurtenances thereunto belonging, to them, the said grantees, their survivors and successors, upon the conditions, trusts and agreements, hereinafter set forth, as follows" : — Then follows a recital of a vote of the company, passed Feb. 3, 1851, authorizing the issue of a series of bonds to the amount of one million five hundred thousand dollars, payable in fifteen years, with semi-annual interest, of specified denominations, all to bear

date April 1, 1851; also of a vote of the stockholders passed March 6, 1851, authorizing the directors to make this mortgage; following which were these provisions:—

"Now, if said company shall well and truly pay the interest which shall from time to time accrue and become payable upon any and all of said bonds, and shall well and truly pay the principal of the same, at the maturity thereof, then this deed shall be void, otherwise shall be and remain in full force.

" It is agreed that the said company may continue in possession of, and manage the said railroad and other property aforesaid, so long as it shall punctually pay the interest and principal aforesaid, according to the tenor of said bonds, and may, from time to time, renew and replace any of the personal property hereby conveyed, by other property of like character, and suited in like manner for the purposes of said railroad," &c.

"This conveyance is made upon the following further trusts and agreements, that is to say:—

"*First*,—If the said railroad company shall at any time fail to pay the interest which shall become due and payable upon any of the bonds aforesaid, or shall fail to pay the principal of the same, according to the tenor thereof, it shall then be lawful for the trustees aforesaid, their survivors and successors, subject to the prior rights of the city of Portland, as aforesaid, into and upon all and singular the premises heretofore granted, to enter, and the same to take into their actual possession, with full power and authority, as trustees as aforesaid, to manage and control the said property, franchise and estate, and to work the said railroad and machinery, and equipment, and receive the income, rents and profits thereof; and after providing for the expenses incident to such management, working and control, and necessary to keep the said railroad and other property in suitable condition for business according to the charter of said company, and after paying whatever sums may become due, from time to time to provide for payment of in-

terest and reimbursement of principal of the scrip issued by the city of Portland, and delivered by said railroad company in pursuance of the several Acts authorizing the said city to aid the construction of said railroad, to apply the net proceeds and balance of such income remaining in the hands of said trustees, to the payment of the interest or principal aforesaid of the bonds secured by this conveyance, which shall be then due and unpaid as aforesaid."

The third condition provided that a vacancy in the number of trustees may be filled by appointment by the others.

The bill, after setting out the mortgage, alleged that the bonds, to secure which the mortgage was made, were duly issued and negotiated, and are still outstanding in the possession of the holders thereof, creditors of said corporation; that the same became due and payable April 1, 1866; that, although payment thereof has been duly demanded, they have not been paid; that the complainants, as trustees, under and by virtue of the mortgage, have been duly notified by the holders of the bonds of the non-payment thereof, and requested to exercise the powers and perform the duties and obligations conferred and imposed upon them, in and by the mortgage.

It further alleges that, after the execution of the mortgage, John Anderson had died, and the vacancy caused by his death had been duly filled by the surviving trustees by their appointment of George F. Shepley; that the appointment has been duly certified; and the conveyances, assignments and transfers required by law and by the mortgage have been duly made.

It further alleges that, after the execution of the mortgage, and the negotiation of the bonds, viz.: on Aug. 5, 1853, the At. & St. L. Railroad Company demised and leased to one Ross, and one Holmes, and one Jackson, subject to the mortgage, all the property theretofore mortgaged, a copy of which lease was annexed to and made a part of the bill.

It further alleges that Ross, Holmes and Jackson, on Feb. 9, 1855, assigned the lease to the " Grand Trunk Railway of

Canada," a corporation doing business in the Province of Canada, a copy of which assignment was annexed and made a part of the bill.

It further alleges articles and covenants supplemental to the lease entered into Dec. 6, 1855, by and between the A. & St. L. R. R. Co. and the G. T. Railway; that the G. T. Railway Company are in the actual possession, occupation and use of the mortgaged property, and are receiving the income and profits thereof; that they neglect and refuse to apply the income and profits or any part thereof to the payment of the mortgage bonds; that the complainants are informed and believe the G. T. Railway are insolvent, and they believe it to be their duty to take proper steps to secure to the bondholders the payment of their bonds from the property held in trust for that purpose.

That, under and by virtue of the provisions of the mortgage, and by reason of the breaches of its conditions, the complainants have the legal right to have possession of the mortgaged property, for the purpose of applying the same and the income and profits thereof to the payment of the bonds, and that they are desirous of having such possession for such purpose.

That, on June 4, at Danville station, on the line of said road, and on June 19, 1866, at the station in Portland, the complainants demanded possession of the railroad and other mortgaged property, of the G. T. Railroad Company and of its servants and agents in the actual possession thereof, and endeavored to take possession thereof, and were by them obstructed and prevented from obtaining such possession, to their great wrong and injury and to that of the bondholders.

That they have been informed and believe that the G. T. Railway Co. has placed upon the railroad sundry engines, cars and other rolling stock and materials for running and operating the railroad, not covered by the mortgage; that it is necessary for the safe conduct and proper performance of the official duties of the complainants, that they should be

enabled to distinguish between these articles of equipment and those mortgaged, and such as have been substituted therefor by virtue of the provisions of the mortgage; that they have no means of ascertaining what and what portion of the engines, cars and other equipment they are entitled to take and use under the mortgage without a discovery from the G. T. Railway Company of these facts; that these facts are material to enable the complainants to perform their official duties; and that a discovery of them is indispensable as proof of the property to which they have title.

The bill prayed for an injunction to restrain the G. T. Railway Company and their servants from interfering with and resisting the lawful proceedings of the complainants, in entering upon and taking actual possession of the mortgaged property and receiving the income and profits thereof;

For a discovery of the amount of outstanding mortgage bonds; together with the number and quantity of cars, engines and other furniture mortgaged or substituted therefor;

For a surrender of the mortgaged property by the Atlantic & St. Lawrence Railroad Co. and G. T. Railway Co.;

For an account and payment of all earnings of the railroad since the demand; and

For general relief.

The respondents demurred.

*P. Barnes,* in support of the demurrer, contended that, independent of statute ratification, the instruments on which the suit was brought are invalid. *Commonwealth* v. *Smith,* 10 Allen, 455; *Richardson* v. *Sibley,* 11 Allen, 65.

If valid now, the statute remedies must be followed. R. S. c. 51, §§ 53 to 62.

The statute makes it the duty of the trustees, after breach of condition, to call a meeting of the bondholders, that the latter may determine for themselves whether or not possession shall be taken of the mortgage property. It also provides that, if the trustees shall be so instructed by the bondholders, they shall proceed to take possession, &c. No such instruction is alleged in the bill. None has been

given. No meeting of the bondholders has been called. The trustees, therefore, were not authorized to maintain this bill.

The same statute that gives validity to the contract as a conveyance also declares what shall be done to secure the practical fruits of such a conveyance. The reasons are obvious, — from the nature of the property, the character of the trust, the peculiarity and importance of the public rights involved in the conveyance, and from the fact, also, appearing on the face of the instruments, that the trustees are mere naked holders of the title. All these charters contemplate that the public interest will be best promoted by the active private interest of the body of responsible shareholders, to whom the management of the enterprise is given. The Legislature contemplate that the holders of the share capital shall not be dispossessed of their interest or responsibility, unless the holders of the debt capital shall put themselves, by their own acts, into a position to assume, eventually, a similar interest and responsibility.

*Howard & Cleaves*, on the same side, contended that, —

I. The bill presents no case within the equity jurisdiction of the Court.

1. The conveyance, under which the complainants claim, is a mortgage; and, not less a mortgage, because it confers on the grantees unusual and extraordinary powers and authority, affecting the rights of other parties. For, as yet, the mortgagees are not in possession, and have not assumed or executed the power specially conferred by the instrument, or placed themselves in a condition to execute the supposed trust. They are now but mortgagees out of possession, and, when in possession, may or may not need the intervention of this Court, as a court of equity. *Howard* v. *Harris*, 1 Vernon, 190; *Manlove* v. *Ball*, 2 Vernon, 84; Co. Lit., 203, Hargrave & Butler's note, 96; *Eaton* v. *Whiting*, 3 Pick., 491; *Shaw & als.* v. *Norfolk County Railroad Co. & als.*, 5 Gray, 162, 181–2.

2. The complainants claim possession of the property covered by the mortgage, for breach of its conditions; and assert that they "have the legal right to have possession of the mortgaged property, for the purpose," &c., "and that they are desirous of having such possession for such purpose."

The object, it seems by the bill, is to obtain possession of the "mortgaged property." The reasons for the possession claimed, and the purposes, may vary with time and circumstances, and change with the views and opinions, and motives of the mortgagees; and, of these, the Court here will take no cognizance. But the jurisdiction of this Court in equity does not embrace such cases; it does not extend to the foreclosure of estates mortgaged, generally, and much less, to the investing the mortgagee with such estates, when they are in possession and control of the mortgager or his assignee, who asserts his right to such possession. R. S., 1857, c. 77, § 8; *Shaw* v. *Gray*, 23 Maine, 174.

"The Legislature have prescribed with precision what shall be done to foreclose a mortgage." 23 Maine, 178−9; R. S., 1840, c. 96, § 10; *Brown* v. *Snell*, 46 Maine, 490.

The Legislature have prescribed the law and the method by which the mortgagee may obtain possession of the mortgaged premises,—R. S., 1857, c. 90, §§ 1–8, (§ 7,)—and that is a plain and adequate remedy at law. *York & Cumberland Railroad Co.* v. *Myers*, 41 Maine, 109.

But the complainants do not, by their bill, seek to foreclose the mortgage. Yet, if they did, their bill could not be maintained in its present form, for want of jurisdiction of this Court, in this regard, as before stated.

3. If it be assumed that this Court has jurisdiction, as a court of equity, for the foreclosure of mortgages of railroads, under R. S., c. 51, § 62, our only reply now, is, that the case stated in the bill does not fall within the provisions of that section.

II. The complainants cannot maintain their bill on the ground of trust.

They are not in a condition to execute the supposed trust, or to invoke the authority of the Court, in equity, to aid them in enforcing and executing it, until they have legally acquired possession under the mortgage; nor until they have exhausted their remedies at law. Trustees, as such, do not lose their rights and remedies at law, because they may be within the jurisdiction and control of a court of equity, in certain cases. They are neither above nor below the law, though favored in equity. *Caswell* v. *Caswell*, 28 Maine, 232; *Fletcher* v. *Holmes*, 40 Maine, 364; *In re, — Bondholders of York & Cumberland Railroad Co.*, 50 Maine, 552.

III. The discovery sought and claimed by the bill, will not enable the complainants to maintain it. For discovery can be decreed only where relief can be given, — R. S., 1857, c. 77, § 8, clause 8, — and in cases where this Court has jurisdiction by statute.

IV. If this Court had the unrestrained jurisdiction and powers of courts of chancery of the most enlarged jurisdiction, it would not interfere in the case at bar. For, by the R. S. of 1857, c. 51, §§ 53, 54, 55, *et seq.*, specially enacted for cases of this kind, the complainants can have a plain and adequate remedy at law, which they are not at liberty to overlook. Nor can this Court, as a court of equity, disregard it, upon their complaint. Stat. 1858, c. 30; Stat. 1860, c. 193; *In re, — Bondholders of York & Cumberland Railroad Co.*, 50 Maine, 552.

Upon general principles, a party who has a plain and adequate remedy at law cannot seek relief in a court of equity.

By the Judiciary Act of the United States, 1789, § 16, it is provided that suits in equity shall not be sustained in either of the Courts of the United States, in any case where plain and adequate and complete remedy may be had at law.

It has been held that this is merely declaratory, making no alteration whatever in the rules of equity, on the subject

of legal remedy. *Boyce's Executors* v. *Grundy*, 3 Peters, 215.

The equity jurisdiction of the United States Courts is the same in nature and extent as the equity jurisdiction of England, from whence it is derived. *Robinson* v. *Campbell*, 3 Wheaton, 212 ; *United States* v. *Howland*, 4 Wheaton, 108 ; *Hunt* v. *Danforth*, 2 Curtis' C. C., 592, 603.

Equity is for "the correction of that, wherein the law, (by reason of its universality,) is deficient." Grotius, *de aequitate*, § 3 ; 1 Black. Com., 61.

And, where there is a plain and adequate remedy at law, the defendant has a constitutional right to trial by jury in the State and Federal Courts.

In *Shaw & als.* v. *Norfolk County Railroad & als.*, 5 Gray, 162, which the complainants claim to be like the case at bar, the Court had jurisdiction, as a court of equity, in "suits for the redemption of mortgages or to foreclose the same." And, "in all other cases, in which there are more than two parties having rights or interests, which cannot be justly and definitely decided and adjusted in one action at common law." R. S., (Massachusetts,) 1836, c. 81, § 8, *et seq.* That was a suit in equity for the foreclosure of a mortgage, but this is not such. There, the jurisdiction was conferred expressly by statute. Here, this Court has no such jurisdiction, or, if it has jurisdiction in case of railroad mortgages, the bill does not present a case of that sort.

The statutes of this State direct what course the complainants should pursue, upon the facts stated in the bill, in order to secure the rights of all parties interested. R. S., 1857, c. 51, §§ 53 to 62 ; 1858, c. 30 ; 1860, c. 193.

But in Massachusetts there were no such statutes, and the Court had special jurisdiction in equity, in such matters. And therefore, we submit that the case of *Shaw & als.* v. *The Norfolk County Railroad & als.*, forms no precedent for the case at bar.

V. The bill does not seek the specific performance of a contract in writing ; and, if it did, there is a plain and ade-

quate remedy at law, — and, by statute regulation, (R. S., c. 51, § 53, &c.,) which does not require a decree for specific performance. Therefore, we submit, if this suit is prosecuted as within the provisions of R. S., c. 51, §§ 53 to 62, the bill presents no case requiring the aid of this Court. But, if this case does not fall within the provisions of that statute, then the complainants cannot sustain their bill before this Court with its limited jurisdiction in equity.

*J. & E. M. Rand,* for the complainants.

WALTON, J. — This is a bill in equity to which the defendants have demurred.

April 1, 1851, the Atlantic & St. Lawrence Railroad Company mortgaged their franchise, and all their property, real and personal, including their right of way, to secure the payment of bonds issued by said company to the amount of $1,500,000. In that mortgage it is agreed, among other things, that if the railroad company should at any time fail to pay the interest which should become due upon any of said bonds, or the principal, according to the tenor thereof, it should then be lawful for the trustees, (subject to the prior rights of the city of Portland,) to take possession of said property, and to work the railroad and machinery and equipments, and receive the income, rents and profits thereof.

The bill alleges that a portion of the bonds became due April 1, 1866; that payment was demanded, but they were not paid; that the trustees have been notified by the holders of said bonds of the non-payment and requested to exercise the powers and perform the duties and obligations conferred and imposed upon them by said mortgage; that, on June 4, and on June 9, 1866, they demanded possession of said railroad and other property included in the mortgage, of the Grand Trunk Railway Company, now in possession of the same under a lease, and endeavored to take possession of the same, but were obstructed and prevented from so doing. Wherefore they pray, among other things, that the

Grand Trunk Railway may be decreed and required to surrender, quietly and peaceably, to the trustees, the railroad and other property mortgaged to them.

It is contended that it was not the duty or the right of the trustees to take the possession and management of the road, because they had not been directed so to do by a vote of the bondholders at a meeting notified and held as provided in R. S., c. 51, § 54. The answer is that they do not claim possession by virtue of the provisions of the public statutes for the foreclosure of railroad mortgages, but by virtue of the express stipulation in the mortgage. In other words, they ask for a specific performance of their contract in this particular. We think they are entitled to it, and that a bill in equity is a proper form of proceeding to obtain it. So held in *Shaw et als., trustees,* v. *Norfolk County Railroad Co.,* 5 Gray, 162. (See opinion of the Court on pages 182 – 3.) Also by Mr. Justice CURTIS, in *Hall et als., trustees,* v. *Sullivan Railway,* (U. S. Circuit Court for district of New Hampshire,) cited by Judge REDFIELD in his work on Railways, page 578, where the opinion of Judge CURTIS is given at length.

It has been argued in defence that this mortgage was originally illegal and void; that it owes its validity to subsequent statutory ratification; and, inasmuch as the same statutes which give it validity prescribe the remedies for a breach of it, those remedies are exclusive, and the only ones that can be adopted; and we are referred to several decisions in other States in which it is held that in the absence of legislative consent such mortgages are invalid.

We do not consider it necessary to enter into a discussion of the question whether this mortgage was originally valid or not. It being conceded that it is now valid, probably the bondholders will be content with the result, and will not care to know particularly how that result is reached, provided it is not hampered with such embarrassments and difficulties as to make it practically unavailing as a means of getting their pay.

Such mortgages have always been regarded and treated as valid in this State, by the courts as well as the Legislature, and we confess that the contrary doctrine seems to us little better than practical repudiation, and not supported by reasons sufficiently weighty to commend it to our judgment. The whole argument seems to have no greater force than this, that it is dangerous to the public interests to have the powers and privileges conferred by a railroad franchise transferred from the original corporators to a new body. But when we consider how little importance is attached to the persons of the original corporators, how soon death must and other circumstances may remove them from all participation in the affairs of the road, how constantly those who have the active management of it are in fact being changed, we shall see how little practical merit this argument has. At the beginning the corporators undoubtedly have a controlling influence, but afterwards the directors are elected by the stockholders, and are often changed. Is there any reason to suppose that if a mortgage should, by foreclosure, transfer the franchise to new hands, that as capable men would not be appointed to manage the road as before? Would not the bondholders be as interested and as capable of appointing suitable managers as the stockholders? Does any one fear that the public interest would not be as safe with the former as the latter? Why then is it dangerous to the public interests to allow such a transfer?

We confess that, after giving the matter much thought, the doctrine that all railroad mortgages made without the consent of the Legislature are illegal and void, because they may operate as a permanent transfer of the corporate powers from the original corporators to another body, seems to us to have little to commend it and much to condemn it.

We do not understand that by this bill the trustees seek to obtain a decree of foreclosure of their mortgage. The objection, therefore, that this Court has no jurisdiction in equity to decree such a foreclosure is not well taken. The bill does not ask for such a decree. Nor do we understand

that possession of the mortgaged property is claimed by virtue of any rule or express provision of law. The objection, therefore, that they have not performed those acts which the statutes referred to make conditions precedent to such a right, is equally foreign. What the trustees claim is to have their contract, by which it was agreed that in a certain contingency they should have possession of the mortgaged property, specifically performed. They do not claim the possession as the result of a rule of law, (except so far as the law requires parties to keep and perform all their lawful contracts,) but as the result of an express agreement. That the Court has jurisdiction of the case made by the plaintiffs' bill we cannot doubt. We do not, of course, undertake to determine with which party the merits will be upon further answer and proofs.

*Demurrer overruled.*

*Defendants to answer further.*

APPLETON, C. J., KENT, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.