Hunt & Bro. v. Memphis Gaslight Co.

HUNT & BRO. v. MEMPHIS GASLIGHT CO.

(*Jackson.*    June 11,    1895.)

1. GAS COMPANY.   *Power to mortgage.*

Express authority is not necessary to enable an incorporated gas compány to execute a valid mortgage of its property.   (*Post, pp. 137–142.*)

Cases cited: Adams v. Railroad, 2 Cold., 645; Memphis, etc., Gas Co. v. Williamson, 9 Heis., 314; McKinney v. Hotel Co., 12 Heis., 104; 21 How., 424; 8 Am. R. R. and Corp. Cas., 640; 43 Mich., 594; 29 Ohio St., 330.

2. SAME.   *Priority of mortgagees over claims for operating expenses.*

The amounts due by a gas company for coal and coke used in the manufacture of gas do not constitute a preferred claim over the amount due mortgagees, especially where there is nothing to show the diversion of current income from the payment of current expenses.   (*Post, pp. 142–144.*)

Cases cited: 99 U. S., 235; 11 U. S., 776; 128 U. S., 416.

3. CORPORATIONS.   *Pledge of bonds not ultra vires.*

Bonds of a corporation are not void as *ultra vires* because they are pledged to secure the company's debts, instead of being sold fof cash to pay debts in accordance with the resolution of the stockholders authorizing their issuance, although a portion of the debt was due to directors, where all reasonable endeavors to make the sale were used, but failed, and the pledge was necessary to quiet the creditors.   (*Post, pp. 144–146.*)

Cases cited and approved: Baxter v. Washburn, 8 Lea, 1–15; 84 N. Y., 190.

4. SAME.   *Liability of directors.*

Doctrine reaffirmed that directors of a corporation are not express trustees, and incur no personal liability to creditors of the corporation where they are not chargeable with bad faith

Hunt & Bro. *v.* Memphis Gaslight Co.

or inattention or negligence in the performance of their duties. (*Post, p. 147.*)

Case cited and approved: Wallace *v.* Bank, 89 Tenn., 630.

5. SAME. *Purchase by bondholders sustained as made in good faith.*

Holders of second mortgage bonds who buy in the property at a sale under their mortgage, although regarded as trustees for creditors and stockholders, cannot be charged with bad faith for rejecting an offer by a business rival of the mortgageor to bid in the property, where the amount of the bid did not equal what they gave for it, while the requirement of the offer was that they guarantee a good title and act on suggestions of the rival's attorneys, and the rival had entered into bond with a municipality not to consolidate with the mortgageor. (*Post, pp. 147–151.*)

Case cited: Irby *v.* Irby, 11 Lea, 165.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JNO. L. T. SNEED, Ch.

GANTT & PATTERSON and B. W. HIRSCH for Hunt & Bro.

H. C. WARINNER, L. and E. LEHMAN, and T. K. RIDDICK for Gaslight Company.

J. H. MALONE, Sp. J. The bill in this case was filed by Hunt & Bro. against the Memphis Gaslight Company and a large number of other persons, in order to realize upon a judgment obtained by the complainants against the Gas Company for $1,754. After

judgment had been obtained, execution issued, and, having been returned *nulla bona*, this bill was filed in order to have two mortgages executed by the Gaslight Company securing bonds aggregating $400,-000, declared null and void, and to subject the mortgaged property to the satisfaction of complainant's debt. Relief was also sought upon other grounds hereinafter considered.

It appears that the Memphis Gaslight Company was incorporated November 20, 1851, by a special act of the Legislature, which act gave the company certain powers and privileges contained in the act of November 21, 1849, incorporating the Nashville Gaslight Company. Neither of these acts contained express power enabling the company to execute a mortgage or trust deed.

On April 1, 1875, the Memphis Gaslight Company executed a mortgage by which it conveyed all of its franchises, rights, lots, grounds, factory, machinery, etc., to a trustee for the purpose of securing its bonds to the amount of $240,000, due at thirty years, and bearing seven per cent. interest. On July 8, 1892, it again executed a mortgage, or trust deed, by which all of its property was conveyed to certain designated trustees for the purpose of securing its bonds to the amount of $240,000, which was to be a first mortgage, or prior lien on the property of the company. These bonds were to be used for the purpose of taking up the $240,-000 of bonds secured under the first conveyance

mentioned.   At the same time, the property of the company was conveyed, by way of second mortgage, to secure bonds of the company to the amount of $160,000, which bonds were to be sold and the proceeds used or applied in taking up the floating indebtedness of the company.   These are the mortgages which the complainants claim are void for want of authority and power in the company to execute.   No question is made as to the due execution of the mortgages, nor is it controverted that the debts secured or intended to be provided for by the issuance of the bonds, were valid and subsisting obligations against the gas company.

It is insisted by the complainants that corporations to which are given large powers and valuable privileges, from the exercise of which it is expected the public will derive advantage, are impliedly restrained in their power of alienation, railroad companies falling in this class; and it is insisted that gas companies are *quasi* public corporations, and are governed by the same rules, and, in the absence of legislative authority, cannot execute a valid mortgage.   Many authorities are cited by counsel for complainants, and much reliance is placed upon the case of *The Portland Gas Company* v. *The State, etc.*, an opinion by the Supreme Court of Indiana, reported in 8 Am. Railroad & Corp. Reps., p. 640, and the note thereto. All of these authorities have been carefully considered, and none of them support the contention of counsel for complainants to the extent claimed.   They

mainly discuss the question whether or not gas com-
panies, water companies, and the like, are *quasi* public
corporations, and some of the cases so hold. Some
of them place the holding upon the ground that the
right of eminent domain had been conferred upon the
corporation, which is not the case with regard to
the Memphis Gaslight Company; and others, again,
place the decision upon the ground of an exclusive
privilege given the company to occupy the streets,
alleys, lanes, etc., of a city, thus practically giving
it, in such case, a monopoly of supplying the city
with gas.

In the case of the *Memphis Gayoso Gas Com-
pany* v. *Williamson*, 9 Heis., 314, it was held by this
Court, in 1872, that it was not the intention of the
Legislature, in the Act incorporating the Memphis
Gaslight Company, to confer the exclusive right to
manufacture gas in that city. It thus appears that
there are material differences between the case at
bar and those relied upon by the complainants. None
of the authorities, however, hold that a gas com-
pany is without power to execute a mortgage.

It was said by the Supreme Court of the United
States, at an early day, that: "It is well settled that
a corporation without special authority may dispose
of the lands, goods and chattels, or any interest in
the same, as it deems expedient, and, in the course of
their legitimate business, may make a bond, mortgage
bond, note or draft, and, also, may make composi-
tion with creditors, or an assignment for their benefit,

with preferences, except when restrained by law."
*Canal Company* v. *Vallett*, 21 How., 424. This language is quoted with approval by this Court in *Adams* v. *The Railroad Co.*, 2 Cold., 645, 660.

As was said in a subsequent case in respect to *Adams* v. *Railroad Co.:* "The simple question presented was, 'had the Mayor and Aldermen of the city of Memphis the power, under their charter, to mortgage their real property or estate for corporation purposes?'" And the court decided it had. *McKinney* v. *Hotel Co.*, 12 Heis., 104–20. A municipal corporation is confessedly a public corporation, and if the power to mortgage is enjoyed by a municipality, it is difficult to perceive upon what principle of public policy this power should be denied a gas company, even though it is a *quasi* public corporation.

In 2 Cook on Stock, Stockholders & Private Corporations, § 779, at page 1261, it is said: "A corporation, other than railroad corporations, may mortgage its real estate and personal property for the purpose of securing its bonds, or other evidence of debt, unless there is some provision in its charter expressly prohibiting or regulating this right. The right to mortgage is the natural result of the right to incur a debt." Numerous cases are cited in the note. And, further on, discussing the same subject, under the title "Gas Companies," the same author says: "A gas company may give a mortgage on its plant." Section 927, p. 1262. Mr. Beach lays down

the doctrine broadly that all corporations, unless re-
strained by their charters, have implied power to
mortgage, the only exception being that of railroads.
2 Beach on Corporations, §§ 388, 389, 738, *et seq.*
To the same effect see Jones on Mortgages, § 124;
Morawetz on Corporations, § 346; *Detroit* v. *Mutual
Gas Co.*, 43 Mich., 594; *Hays* v. *Galion Gas Co.*,
29 Ohio St., 330.

Though the authorities in other States agree in
holding that a railroad corporation, owing to the
peculiar relation which it bears to the public, should
be denied the right to execute a mortgage unless it
has express legislative authority therefor, yet, as a
matter of fact, this power is always conferred; and,
indeed, it is doubtful whether a railroad could be
successfully operated without the power to mortgage.
Thus the practical results of business have demon-
strated the unsoundness of the reasoning upon which
the principle was established that it was against
public policy to confer upon railroad corporations
the power to execute a mortgage. Our conclusion
is that the Memphis Gaslight Company was authorized
to execute the mortgage in question. This conclu-
sion renders it unnecessary to consider the effect of
the Act of 1885, conferring upon certain corporations
the power to execute mortgages or trust-deeds.

It is next insisted that, as the debt due complain-
ants was for the purchase money of coal and coke
used by the gas company in the manufacture of gas,
that this constitutes a preferred claim, superior, even,

to the rights of the holders of the mortgage bonds. In order to sustain this position, much reliance is placed upon the case of *Fosdick* v. *Schall*, 99 U. S., 235; *Burnam* v. *Bowen*, 11 U. S., 776, and similar cases. All of the cases cited by counsel for the complainants are actions against railroads; and in these cases the principle is laid down that, when a Court of Chancery appoints a receiver of railroad property, it may impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipments, or permanent improvement of the mortgaged property, as may, under the circumstances of the particular case, appear to be reasonable; and that it is within the power of the Court to use the income of the receivership to discharge obligations for labor, supplies, and the like, which, but for the diversion of the funds, would have been paid in the ordinary course of business.

Chief Justice Waite, in the course of the opinion in the first cited case, says : " The mortgagee has his strict rights, which he may enforce in the ordinary way. If he seeks no favors, he need grant none; but if he calls upon a Court of Chancery to put forth its extraordinary power and grant him purely equitable relief, he may, with propriety, be required to submit to the operation of the rule which always applies in such cases, and do equity in order to get equity. The appointment of a receiver is not a matter of strict right. Such an application calls for the

exercise of judicial discretion, and the Chancellor should so mold his order that, while favoring one, injustice is not done to another." *Fosdick* v. *Schall*, *supra*. In a later case, where this doctrine was invoked in respect to a proceeding against a waterworks company, Mr. Justice Lamar, delivering the opinion of the Court, said : "The doctrine of *Fosdick* v. *Schall* has never yet been applied in any case except that of a railroad. The case lays great emphasis on the consideration that a railroad is a peculiar property of a public nature and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only point it out." *Wood* v. *Guarantee Trust Co.*, 128 U. S., 416.

Again, the doctrine invoked by the complainants only applies where there is a diversion of the income of a "going concern" from the purposes to which the income is equitably and primarily devoted—viz., the payment of the operating expenses of the concern. *Ib.*

The record in this case fails to disclose that the current income of the gas company was in any way diverted, or not used in paying the current expenses of the company. We are of opinion that there is no error in the decree of the Chancellor denying a prior lien in favor of the complainants upon the property of the gas company.

It is next insisted by the complainants that, by

the terms of the resolutions adopted by the stock-holders, under which the issue of the $160,000 of bonds was authorized, it was contemplated that these bonds were to be sold for cash, and the proceeds used to liquidate the floating debt of the company, and that the board of directors, in breach of its duty, pledged these bonds to secure debts due to some of the directors, and to secure others as ac-commodation indorsers.

There is no doubt but that it was contemplated by the stockholders, and the directors as well, that these bonds should be sold; but the evidence shows that the directors used all reasonable endeavors to accomplish this end, but failed.

The resolution recites that the floating indebted-ness of the company then amounted to $135,134.80, the validity of which is in no part impeached by complainants. The resolution also recites that, in making necessary improvements, additions, and exten-sions, it would be necessary to expend $25,000 in addition to the above; hence, the issue of the $160,000 second mortgage bonds was authorized. Of the $135,134.80, only about $11,000 was due to directors, the balance being due to the banks, and third persons who were clamerous for payment. Many propositions looking to a placing of these bonds among the stockholders were made and dis-cussed, and attempts were also made in an endeavor to effect a consolidation with the Equitable Gaslight Company, the rival in business of the Memphis Gas-

light Company, through the American Debenture Company, of New York; but the debenture company failed in business, and all efforts to extricate the Memphis Gaslight Company through these means proved abortive.

In order to quiet creditors, the bonds, from time to time, were pledged to secure the various creditors holding the floating indebtedness above mentioned. Complainants insist that this pledge was a misapplication of the bonds, *ultra vires*, and void, but the reverse has been decided in this State, and we adhere to that opinion. *Baxter* v. *Washburn*, 8 Lea, 1–15. See, also, *Dunscombe* v. *Railroad*, 84 N. Y., 190. The various debts for which these bonds were pledged matured from time to time, and, the banks declining to extend time of payment, the collateral bonds were sold and bought in by the various creditors; and, upon demand made, default having been made in the payment of the interest coupons on the bonds, at the request of the holders of the second mortgage bonds, the entire plant of the Memphis Gaslight Company was sold by the trustee, subject to the first mortgage bonds and back taxes, estimated at from $10,000 to $20,000, and also subject to the claims of certain material men, then in suit, aggregating about $8,000.

The property was purchased by T. K. Riddick, C. W. Schulte, and C. F. M. Niles, representing the holders of the second mortgage bonds, for $125,000,

and the purchasers were in possession when the bill in this case was filed.

Directors of a corporation are not express trustees. At most, they are implied trustees, and are not expected to, give their whole time and attention to the business of the company, but, by assuming the office, they do agree to give as much of their time and attention to the duties assumed as the proper care of the interest intrusted to them may require. *Wallace* v. *Bank*, 89 Tenn., 630. The utmost good faith must at all times be exercised by directors.

After a careful survey of all the evidence, we fail to find that the directors were guilty of any bad faith whatever, and it also appears that they were not wanting in care and attention to the best interests of all concerned. In fact, the evidence discloses that, in view of the character of the business of the company, the condition of its business, and all other relevant facts, the directors are not chargeable either with bad faith or inattention or negligence in respect to the performance of their duties.

One other question remains to be disposed of. After the banks and holders of the floating indebtedness had closed out their collaterals and became owners of the second mortgage bonds, and after the trustee had advertised the plant of the Memphis Gaslight Company for sale, negotiations were set on foot by representatives of the Equitable Gaslight Company looking to a purchase of these second mortgage bonds, with a view of purchasing, or effecting

a consolidation with the Memphis Gaslight Company; and, to that end, the following proposition was addressed to J. T. Frost and his associates, who were the owners of the second mortgage bonds:

"MARCH 2, 1894.

*"J. T. Frost and associates, Memphis, Tenn.:*

"DEAR SIRS—We agree and bind ourselves to you and your associates to bid for and purchase the property of the Memphis Gaslight Company, as described in the advertisement of the Manhattan Savings Bank & Trust Company, etc., and to give therefor the sum of $135,000, out of which, all taxes upon said property are to be paid. Said price to be paid for the same at any sale under which a satisfactory title can be acquired. As soon as we have title and possession of said property, we will procure and transfer to you and your associates who accept the terms of this offer, within ten days from date of possession, fully paid up stock in the Equitable Gas Company, of Memphis, Tenn., equal at par value to seventy-five per cent. of the amount invested or advanced by you and your associates on the second mortgage bonds of said Memphis Gaslight Company, it being understood that the capital stock of the Memphis Gaslight Company does not now, or will not after said seventy-five per cent. is issued, exceed the total sum of $1,000,000.

"We will employ attorneys, at our own expense, to examine and conduct necessary proceedings to ob-

tain satisfactory title to the aforesaid title of property, you and your associates agreeing to bind yourselves to act according to the suggestions of our attorneys in the premises.

"It is further agreed and understood, that whilst we are not bound to bid any sum over and above $135,000, we are at liberty to bid a further sum at any sale that may take place of said property; but, no matter what sum may be bid by us in excess of the $135,000 for said property, it is in no way to change the stipulation herein contained in regard to the amount of Equitable Gaslight stock to be furnished you and your associates.

"(Signed)                    WM. KATZENBERGER,

"ISADORE KATZENBERGER."

It is insisted on behalf of the complainants, that all the holders of the second mortgage bonds bore a fiduciary relation toward the creditors and stockholders of the Memphis Gaslight Company, and that the above proposition should have been accepted by them. Conceding, for the sake of argument, the existence of the fiduciary relation, we are not prepared to admit the soundness of this contention. Deducting the taxes admitted to be due upon the property, and not considering the claims in suit by material men, the $125,000 realized at the sale subsequently had equaled in amount the $135,000 in cash offered in this proposition. The offer within ten days from the date of possession to deliver fully paid

up stock in the Equitable Gas Company, equal at the par value to seventy-five per cent. of the amount invested or advanced by the second mortgage bondholders, was regarded by Frost and his associates as an improper proposal, or, at least, one which would lay them open to grave suspicion on the part of the stockholders. The propriety of accepting such a proposition may be well doubted, but, passing that by, it will be noted that the $135,000 was to be paid only at a sale under which a satisfactory title could be acquired. It has been held that, in case of a chancery sale, the Court has no power to give a bidder assurance of a good title, and that a proffer to bid upon such assurance cannot be entertained. *Irby* v. *Irby*, 11 Lea, 165.

Conceding that Frost and his associates bore a fiduciary relation to the creditors and stockholders, we know of no law which imposed upon them the duty of guaranteeing to anyone a perfect title under the sale as advertised. And the proposition is especially objectionable when we see the additional condition imposed was, that the Messrs. Katzenbergers were to employ attorneys, at their own expense, "to examine and conduct necessary proceedings to obtain satisfactory title to the aforesaid title of the property, you and your associates agreeing to bind yourselves to act according to the suggestions of our attorneys in the premises."

When it is remembered that this was long the rival in business of the Memphis Gaslight Company,

and that the Equitable Company had obtained a contract with the city of Memphis to light the streets, and had entered into a bond obligating itself, as one of the conditions of obtaining the contract, that it would not enter into any contract or combination or consolidation with the Memphis Gaslight Company, it would have been exceedingly injudicious, to say the least of it, to have accepted such a proposition. The property was then under advertisement, and the Equitable Gas Company, or anyone else, was at liberty to purchase upon equal footing with the holders of the second mortgage bonds. As was observed by the Court in the last cited case: "The only test of the value of property at a forced sale is what it will bring." *Ib.*

There is no proof whatever in the record that the sum bid by the purchasers at this sale was inadequate. We are of opinion, upon a review of the whole case, that the decree of the Chancellor was correct, and it will be affirmed with costs.